UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHIRLEY JN JOHNSON,

      Plaintiff,

v.                                    Case No. 6:15-cv-1698-Orl-37GJK

NEW DESTINY CHRISTIAN CENTER
CHURCH, INC.; PAULA MICHELLE
MINISTRIES, INC.; PAULA MICHELLE
WHITE; and RESURRECTION LIFE
THC, INC.

      Defendant.

_____

**<u>ORDER</u>**

In this action, Defendants seek dismissal of the operative complaint for lack of

subject matter jurisdiction. (Doc. 86.) Additionally, Defendants request that the Court

issue a "friendly contempt order," so that they may appeal a recent discovery ruling.

(Doc. 117.) Plaintiff responded to both motions (Docs. 95, 119) and, in turn, seeks

default judgment against Defendants for their noncompliance with the contested

discovery ruling (Doc. 119). Defendants oppose Plaintiffs motion for default judgment.

(Doc. 121.) For the reasons set forth below, the Court finds that the motion to dismiss is

due to be granted in part and denied in part, the motion for a contempt order is due to

be granted in part, and the motion for default judgment is due to be denied.

## I.      OVERVIEW

This diversity action for malicious prosecution presents a multitude of disputes between dueling preachers. The present squabbles include: (1) a-late-in-the-game motion to procure dismissal of the complaint based on questions about the adequacy of the amount in controversy ("**AIC**") as plead; and (2) fervent efforts by Defendants to avoid the production of financial information, despite compulsion by the Court.

Due to the nature of Plaintiff's claim, the Court begins by addressing the parties' contentious history. It then turns to the merits of Defendants' motion to dismiss, followed by the matter of contempt and sanctions.

## II.      BACKGROUND

### A.      Prior Copyright Suit

The instant suit arises from a copyright infringement action initiated by Paula White Ministries ("**PWM**") against Plaintiff Shirley Jn Johnson ("**Johnson**") almost three years ago. *See Paula White Ministries v. Johnson*, Case No. 6:14-cv-497-Orl-31DAB ("**Copyright Action**"), Doc. 1. PWM describes itself as a global ministry that uses television, radio, literature, public speaking, and the Internet to communicate its message. (*Id.* ¶ 1.) In the Copyright Action, PWM alleged that Johnson knowingly violated federal copyright laws by copying, modifying, and displaying PWM's original and creative works—photographs and videos—on her website for financial gain and without permission or authorization from PWM. (*Id.* ¶¶ 8, 10, 13.) But, according to Johnson, such allegations were not legitimate and were asserted maliciously. (*See* Doc. 76.)

Specifically, in the Copyright Action, Johnson alleged that PWM's complaint was brought in retaliation because Paula White had been exposed as a false preacher. (*Copyright Action*, Doc. 16, p. 9.) Indeed, as set forth in her answer to the complaint, Johnson operates a website and YouTube channel ("**Online Platforms**") that seek to "bring truth and clarity to the scriptures," while exposing false preachers, "who pervert the true meaning of Bible scriptures through purposeful misinterpretation in an effort to manipulate viewers and congregants into giving money so that they . . . can live extravagant lifestyles." (*Id.* at 1.) In addition, Johnson denied any infringement, relying on the doctrine of fair use and, alternatively, the statute of limitations. (*Id.* at 2, 5.)

On December 16, 2014, Johnson moved for summary judgment as to PWM's copyright claims. (*Copyright Action*, Doc. 32 ("**MSJ**").) PWM did not respond to the MSJ; rather, on January 2, 2015, PWM moved to dismiss its complaint without prejudice on grounds of judicial economy and the best interests of the parties.  (*Id.*, Doc. 34.) Finding that "[the] case was in a posture where the outcome should be *res judicata*," U.S. District Judge Gregory A. Presnell denied the motion to dismiss without prejudice and directed PWM to either: (1) assert a motion to dismiss *with* prejudice; or (2) respond to Johnson's MSJ. (*Id.*, Doc. 36.) PWM elected to dismiss its claims with prejudice (*id.*, Doc. 37) and, despite Johnson's vehement opposition (*see id.*, Doc. 38), Judge Presnell granted PWM's amended motion and dismissed the action with prejudice (*id.*, Doc. 40). However, Judge Presnell advised Johnson that, should she wish to pursue affirmative relief against PWM for malicious prosecution, she could do so by filing a separate complaint. (*Id.*, Doc. 40.)

### B.    Instant Action

Heeding Judge Presnell's advice, Johnson filed the instant malicious prosecution action six months later, invoking the Court's diversity jurisdiction. (Doc. 1 ("**Original Complaint**").) The Original Complaint asserted claims against PWM,[1] New Destiny Christian Center Church, Inc. ("**New Destiny**"), Paula Michelle Ministries, Inc. ("**PMM**"),[2] and Paula Michele Cain. (*Id.*) Following several amendments (Docs. 10, 22, 76), Johnson now seeks relief against New Destiny, PMM, Paula Michelle White ("**White**"), and Resurrection Life THC, Inc. ("**Resurrection Life**"). (Doc. 76 ("**Operative Complaint**").) Importantly, Johnson seeks to pierce the corporate veil of PMM, New Destiny, and Resurrection Life (collectively, "**the Entity Defendants**") based on her assertion that "through their directors and agents" they "initiated and actively participated in an illegal scheme to fraudulently convey or conceal [New Destiny and PWM's] assets so that they could not be reached by this lawsuit." (*See generally id.* ¶¶ 15–57.)

In support, Johnson alleges that:

(1)    White is the president and on the Board of Directors ("**BoD**") for New Destiny and PWM;

(2)    White is on the BoD for Resurrection Life;

(3)    White directly participated in initiating and prosecuting the previous Copyright Action, which she filed purely for personal reasons;

(4)    White used PMM and New Destiny as a shield to

---

[1] Johnson now asserts that PWM is merely a fictitious name under which Defendant New Destiny Christian Center Church, Inc. operates its online business. (Doc. 1, ¶ 6.)

[2] According to the operative complaint, PMM was dissolved on August 11, 2014, during the pendency of the Copyright Action. (Doc. 76, ¶¶ 7, 33.)

avoid personal liability and legal expenses;

(5)    Prior to PMM's dissolution, PWM was registered to PMM;

(6)    New Destiny is a successor corporation and a mere continuance of PMM;

(7)    PWM is currently owned by New Destiny;

(8)    Resurrection Life is a sham corporation and an instrumentality of New Destiny and PWM and "was organized and incorporated with the fraudulent and improper purpose of holding the assets of [New Destiny and PWM], shielding [New Destiny and PWM] from liability[,] and defrauding [Johnson] and other creditors";

(9)    The Entity Defendants have overlapping staff and leadership; and

(10)   The Entity Defendants share a common business address.

(*Id.* ¶¶ 15, 17, 19, 26, 29, 32, 33, 36, 38, 41, 45, 52–54.)

### C.    Pending Motions

Despite having answered Johnson's prior iteration of the Complaint (Doc. 48), Defendants move to dismiss the Operative Complaint for lack of subject matter jurisdiction. (Doc. 86 ("**MTD**").) Concurrently, the parties fell into a bitter dispute over the discoverability of Defendants' financial information, which Johnson seeks in furtherance of her demand for punitive damages.[3] (*See* Docs. 67–73.)

On August 19, 2016, U.S. Magistrate Judge Gregory J. Kelly entered an Order partially granting Johnson's motions to compel unanswered and unproduced discovery. (Doc. 78 ("**August 19 Order**").) Shortly thereafter, Defendants moved for relief from the August 19 Order. (Doc. 83 ("**Motion for Relief**").) Magistrate Judge

---

[3] Defendants also contest Johnson's entitlement to other information that they deem confidential, including New Destiny's organizational bylaws. (*See* Doc. 117, pp. 5, 9.)

Kelly granted Defendants' Motion for Relief in part on November 22, 2016, (Doc. 103 ("**November 22 Order**"), thereby limiting the scope of many of Johnson's discovery requests and denying others as vague, overbroad, unduly burdensome, or not proportional to the issues in the case (*id.* at 9–13). However, the November 22 Order denied the Motion for Relief in all other respects and directed Defendants to serve answers to certain interrogatories and produce discovery responsive to Johnson's requests for production. (*Id.* at 14–15.)

Unhappy with this ruling, Defendants appealed the matter to the Undersigned by filing objections. (Doc. 106.) Ultimately, the Undersigned: (1) overruled Defendants' objections; (2) affirmed Magistrate Judge Kelly's rulings; and (3) directed Defendants to comply with the November 22 Order on or before February 8, 2017. (Doc. 115 ("**Affirmance Order**").) Cognizant of Defendants' concern that Johnson would disseminate any disclosed financial information on the Internet (*e.g.*, Doc. 106, pp. 18–19), the Affirmance Order included the following restriction:

> Absent further order, [Johnson] shall refrain from any extrajudicial publication of the discovery material to any source and shall not disclose the information to any person or entity other than any expert witness or subsequently retained counsel as necessary for the prosecution of this action. Violation of this portion of the Court's order will result in sanctions. ("**Nondisclosure Directive**").

(Doc. 115.)

Nonetheless, Defendants did not comply with the Affirmance Order; rather, on February 8, 2017, Defendants filed a motion for a "friendly contempt order," in order to

trigger their appellate rights with respect to the discovery rulings.[4] (Doc. 117 ("**Motion for Contempt**").) As a countermeasure, Johnson moved for default judgment. (Doc. 119 ("**Motion for Default Judgment**").) All pending motions have been fully briefed and are ripe for the Court's consideration.

## II.    MOTION TO DISMISS

In their MTD, Defendants contend that Johnson has failed to allege any facts from which the Court can plausibly infer that the AIC exceeds $75,000.[5] (Doc. 86, p. 2.) In particular, Defendants argue that: (1) Johnson cannot rely on 17 U.S.C. § 512 to support her claim for damages, as she has not filed a claim under that statute; (2) Johnson's request for nominal and non-economic damages is speculative; and (3) Johnson's request for punitive damages fails to satisfy the substantive pleading standard of § 768.72 of the Florida Statutes. (*Id.* at 4–10.) While at least one of Defendants' arguments has merit, upon examination of the relevant authorities and the allegations in the Operative Complaint, the Court finds that, on the whole, dismissal is not warranted.

### A.    Standards

In diversity cases, district courts have original jurisdiction over cases in which the parties are completely diverse and the AIC exceeds $75,000. 28 U.S.C. § 1332(a). Though

---

[4] Hereinafter, the Court will collectively refer to the November 22 and Affirmance Orders as "the Contested Discovery Orders."

[5] Johnson sufficiently alleges that the parties are diverse. (Doc. 76, ¶¶ 2, 5–9.) Defendants do not contest this point.

> [t]he intent of Congress drastically to restrict federal
> jurisdiction in controversies between citizens of different
> states has always been rigorously enforced by the courts[,]
> the rule governing dismissal for want of jurisdiction in cases
> brought in the federal court is that, unless the law gives a
> different rule, the sum claimed by the plaintiff controls if the
> claim is apparently made in good faith.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Thus, because a

plaintiff is "the master of his own claim," *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095

(11th Cir. 1994), "[i]t must appear to a legal certainty that the claim is really for less than

the jurisdictional amount to justify dismissal," *St. Paul*, 303 U.S. at 289. Moreover,

"[w]here both actual and punitive damages are recoverable under a complaint, each

must be considered to the extent claimed in determining jurisdictional amount." *Cohen

v. Office Depot, Inc.*, 184 F.3d 1292, 1295 (11th Cir. 1999) (quoting *Bell v. Preferred Life

Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943)), *vacated on other grounds on reh'g*,

204 F.3d 1069 (11th Cir. 2000).

### B.  Purported Federal Claims

In her *ad damnum* clause, Johnson requests economic, non-economic, and

nominal damages pursuant to 17 U.S.C. § 512(f). (Doc. 76, pp. 16–17.) Additionally,

Johnson alleges that Defendant violated her rights under the First Amendment to the

U.S. Constitution by filing the Copyright Action and "making numerous false copyright

infringement complaints to YouTube, which caused the removal of videos from [her]

channel." (*Id.* ¶¶ 61, 62.) But contrary to Johnson's representations, she has not properly

plead any § 512 or First Amendment claims.

As an initial matter, the First Amendment prohibits *Congress and the States* from

making any law abridging the freedom of speech. *United Bhd. of Carpenters & Joiners of Am. Local 610 v. Scott*, 463 U.S. 825, 831 (1983). As such, the First Amendment protects individuals against *government action*, not against wrongs by individuals or private entities. *See id.* at 831–32. Thus, even if the Court were to permit Johnson to amend the Operative Complaint, any attempt to assert a First Amendment claim against Defendants would be futile.

Second, to the extent that Johnson intends to state a claim under 17 U.S.C. § 512(f), the Court finds that she has failed to do so. Specifically,

> [s]ection 512, Title 17, of the United States Code lays out a detailed process allowing a copyright owner who observes infringing content on a website like YouTube to have the content taken down. Under the statute, the copyright owner must send a written communication to the service provider identifying the offending video and asserting under penalty of perjury that the sender is the copyright owner and has a good faith belief that the video infringes the sender's copyright.

*Big Cat Rescue Corp. v. Big Cat Rescue Entm't Grp.*, No. 8:11-cv-2014-JDW-TBM, 2013 WL 12158980, at *10 (M.D. Fla. Jan. 15, 2013). In turn, subsection (f) "sets out a private cause of action for anyone who is injured by a material representation that content or activity is infringing when it is not." *Disney Enters., Inc. v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286, at *46 (S.D. Fla. Sept. 20, 2013). Verbatim, this subsection provides that:

> [a]ny person who knowingly materially misrepresents under this section that material or activity is infringing shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider

> relying upon such misrepresentation in removing or
> disabling access to the material or activity claimed to be
> infringing, or in replacing the removed material or ceasing
> to disable access to it.

17 U.S.C. § 512(f)(1). A critical element of a § 512(f) claim is the existence of an injury caused by the misrepresentation. *Hotfile Corp.*, 2013 WL 6336286, at \*48. As such, to properly state a claim under this subsection, Johnson must allege that Defendants' misrepresentation to YouTube, and YouTube's reliance on that misrepresentation, proximately caused her damages. *See id.* (citing *Lenz v. Universal Music. Corp.*, No. C 07-3783 JF, 2010 WL 702466, at \*10 (N.D. Cal. Feb. 25, 2010)).

A review of the Operative Complaint reveals that each factual allegation related to Johnson's *damages* stems from the prosecution of the Copyright Action rather than the removal of her videos from YouTube. This omission is fatal to a § 512(f) claim, and it also underscores the Court's conclusion that Johnson intended only to assert a malicious prosecution claim in this action. Notably, the Operative Pleading is titled "Plaintiff's Third Amended Verified Complaint for Malicious Prosecution" and the opening paragraph states only that Johnson is suing Defendants for malicious prosecution. (Doc. 76, p. 1.) Moreover, Johnson uses headings throughout her pleading to identify jurisdictional allegations (*id.* at 2), the parties (*id.* at 3), the underlying facts (*id.* at 4), grounds for piercing the corporate veil of the Entity Defendants (*id.* at 5), and her malicious prosecution claim (*id.* at 11). Yet nowhere in her pleading does Johnson identify either a First Amendment or § 512(f) misrepresentation claim in this manner. Finally, Johnson invokes the Court's jurisdiction on grounds of diversity jurisdiction,

not federal question jurisdiction. (Doc. 76, ¶ 1.)

Further, under Rule 10(b), "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." And "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). Here, Johnson's malicious prosecution claim and any alleged § 512(f) violations would be based on separate occurrences: (1) the prosecution of the Copyright Action; and (2) representations made to YouTube that caused Johnson's videos to be taken down. Therefore, any purported federal claims should have been alleged in separate counts.

With the exception of damages, there are factual allegations in the Operative Complaint to support a § 512 claim. Nonetheless, at this late stage of the litigation, it would be unfair to allow Johnson to amend her pleading a fourth time to state a claim that was neither within the contemplation of Defendants nor the Court. Indeed, notwithstanding her response to the MTD, Johnson seems to have been under the mistaken impression that § 512(f) provided a basis for the recovery of discrete damages, not a wholly separate cause of action. In any event, Johnson's claimed economic, non-economic, and nominal damages are recoverable under state law.[6]

---

[6] *See, e.g., Ware v. Untied States*, 971 F. Supp. 1442, 1471 (M.D. Fla. 1997) (recognizing reasonable out-of-pocket expenses and non-economic damages as "legitimate grounds for monetary relief in an action for malicious prosecution"); *S.H. Kress & Co. v. Powell*, 180 So. 757, 763 (1938) (discussing the availability of compensatory damages arising from "actual and indirect pecuniary loss, mental suffering, value of time, actual expenses, and bodily pain and suffering" in the context of an action for

### C.    Asserted Speculative Damages

Defendants' next argument is that Johnson's asserted nominal, non-economic, and punitive damages are too speculative to be considered in the Court's assessment of the AIC. (Doc. 86, pp. 6–10.) Not so.

With respect to damages, Federal Rule of Civil Procedure 8(a)(3) requires only that a complaint "contain a demand for the relief sought, which may include relief in the alternative or different types of relief." Beginning with non-economic damages, Johnson requests $500,000. (Doc. 76, p. 16.) In support, Johnson alleges that: (1) PMM and White brought the Copyright Action "with the ulterior motive of using (or misusing) the Judicial System to intimidate, punish, shame, harass, and attempt to extort millions of dollars from [her];" (2) "[a]s a direct and proximate result of [Defendants'] willful and wanton conduct, [she] has suffered unnecessary psychological and emotional distress"; (3) "due to the criminal nature of the claims, had Defendant White's scheme succeeded, [Johnson] would have suffered millions of dollars in damages, and potentially faced five (5) years in prison for criminal copyright infringement"; (4) "[a]s a direct and proximate result of [Defendants'] actions, for ten (10) months [she] was plagued with thoughts of incarceration"; (5) "[f]or ten (10)

---

malicious prosecution and false imprisonment); *see also Stoler v. Levinson*, 394 So. 2d 462, 463 (Fla. 3d DCA 1981) (concluding that items of damages with respect to, *inter alia*, nominal damages were sufficient to send the case to the jury as to the plaintiff's malicious prosecution and abuse of process claims); *Adler v. Segal*, 108 So. 2d 773, 775 (Fla. 3d DCA 1959) ("[T]here is substantial authority that a malicious prosecution is actionable per se, and certain kinds of damage necessarily follow from the wrongful prosecution itself, and so will be assumed by the law to exist."); *Fla. Standard Jury Instructions – Civil Cases [Reorganized]*, Instruction No. 406.12 (providing instructions for malicious prosecution damages).

months, [she] was forced to set aside her own work to spend countless hours researching and studying in order to defend against [Defendants'] false claims, which resulted in the loss of sleep"; (6) "[o]n many occasions [her] research lasted all night and well into the following day[,] which resulted in mental confusion, bouts of short-term memory loss and forgetfulness"; and (7) "[she] was compelled to expend money, time, energy and resources in order to defend against [Defendants'] unjustifiable and baseless claims." (Doc. 76, ¶¶ 77, 82–85, 87–88.)

Here, not only has Johnson complied with Rule 8(a)(3), but she has also asserted factual allegations that support her demand for non-economic damages. That being so, the determination as to the amount of such damages is within the unique purview of the factfinder at a trial on the merits. *Adler*, 108 So. 2d at 775. While she may not actually recover $500,000, the Court cannot say that, when added to her other claimed damages—which, contrary to Defendant's contentions, properly include a claim for punitive damages—there is a legal certainty that Johnson will recover less than $75,000. *See Terry v. United States*, No. 3:06-cv-204-J-32TEM, 2008 WL 619317, at *9 (M.D. Fla. Mar. 4. 2008) (recognizing the subjective nature of non-economic damages and that "there's no quantifiable way to quantify somebody's pain and suffering"); *see also Golden v. Dodge-Markham Co.*, 1 F. Supp. 2d 1360, 1366 (M.D. Fla. 1998) ("Compensatory damages are extremely nebulous."). The same analysis applies in assessing the sufficiency of Johnson's claim for $10,000 in nominal damages. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable,

and that a recovery is very remote and unlikely.").

Defendants' argument as to punitive damages, however, requires a less straight-forward analysis. Federal courts sitting in diversity follow substantive state law in determining what factual allegations a plaintiff must plead to seek punitive damages. *Dunn v. Koehring Co.*, 546 F.2d 1193, 1201 (5th Cir. 1977), *clarified on reh'g*, *Hyde Constr. Co. v. Koehring Co.*, 551 F.2d 73 (5th Cir. 1977).[7] Under Florida law, "[p]unitive damages are recoverable in a malicious prosecution action, where actual malice and want of probable cause are shown, or where the legal proceedings complained of were commenced under circumstances of oppression, wantonness, or a reckless disregard of plaintiff's rights." *Adler*, 108 So. 2d at 776 (quoting *S.H. Kress*, 180 So. at 763). "Allegations that the defendant perpetrated a fraud with willful and wanton disregard of the rights of the plaintiff have been held sufficient to plead an adequate predicate for punitive damages." *Harris v. Lewis State Bank*, 482 So. 2d 1378, 1385 (Fla. 1st DCA 1986).

Section 768.72(1) of the Florida Statues, however, purports to impose additional requirements on plaintiffs, as follows:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant[,] which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence [that] appears reasonably calculated to lead to

---

[7] All decisions handed down by the U.S. Court of Appeals for the Fifth Circuit prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

> admissible evidence of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

Relying on this provision, Defendant argues that Johnson's demand for punitive damages is speculative because she has not satisfied the substantive pleading requirements of § 768.72(1).

In evaluating the applicability of this statute in diversity cases, the Eleventh Circuit has divided it into two separate components: (1) the pleading component, which requires a plaintiff to obtain leave of court before including a prayer for punitive damages in his complaint ("**Pleading Component**"); and (2) the discovery component, which requires a plaintiff who has made a claim for punitive damages to produce evidence or make a proffer of evidence that shows a reasonable basis for the punitive damages claim ("**Discovery Component**"). *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir. 2001). Due to its conflict with Rule 8(a)(3), the Eleventh Circuit has held that the Pleading Component of § 768.72 is inapplicable in federal diversity cases. *Cohen*, 184 F.3d at 1299. However, courts within this Circuit have held that the Discovery Component remains viable and is satisfied where a plaintiff pleads specific acts committed by a defendant that provide a reasonable basis to support a punitive damages claim.[8]

---

[8]   *See Porter*, 241 F.3d at 1340–41; *Collins v. De Los Santos*, No. 6:16-cv-852-Orl-31TBS, 2016 WL 4194033, at *1–2 (M.D. Fla. Aug. 9, 2016); *Gerlach v. Cincinnati Ins. Co.*, No. 2:12-cv-322-FtM-29DNF, 2012 WL 5507463, at *2 (M.D. Fla. Nov. 14, 2012); *Woolington v. 1st Orlando Real Estate Servs., Inc.*, No. 6:11-cv-1107-Orl-31GJK, 2011 WL 3903252, at *2 (M.D. Fla. Sept. 6, 2011). *But see Shiver v. Bridgestone Ams. Tire Operations, LLC*, No. 3:11-cv-1256-J-25JBT,

Upon consideration, the Court finds that Johnson's factual allegations are sufficient "to raise a right to relief above the speculative level."[9] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the November 22 Order, Magistrate Judge Kelly also concluded that Johnson's allegations satisfied the Discovery Component. (Doc. 103, p. 7–8 (finding that Johnson is entitled to discovery of some financial information from Defendants based on the specific, factual allegations in the Operative Complaint, which demonstrate a reasonable basis for her punitive damages demand).) The Undersigned previously affirmed that ruling (Doc. 115) and continues to do so.

In sum, Defendants have failed to show that Johnson's damage claim was not made in good faith, nor have they proven to a legal certainty that Johnson would recover less than $75,000 if she prevailed. As such, their MTD is due to be denied.

## IV. MOTION FOR CONTEMPT

In their Motion for Contempt, Defendants seek to trigger their right to appeal the Contested Discovery Orders by requesting a "friendly contempt order." (*Id.*) As

---

2013 WL 937599, at *2 (M.D. Fla. Mar. 11, 2013) (rejecting the defendants' argument that any specificity requirement to pleading punitive damages exists in federal diversity cases).

[9] Specifically, Johnson alleges that: (1) on October 13, 2013, White told her congregation and online viewers that she intended to stop the enemy because she felt mocked and reproached by Johnson; (2) that same day, White stated that she "intended to do damage and be a menace" to the enemy (Johnson); (3) five months after making these statements, White filed the Copyright Action; (4) White filed the Copyright Action (a) to silence Johnson's criticism of her and her biblical teachings, and (b) in retaliation because she was angry that she had been exposed by Johnson's videos; (4) in the Copyright Action, Defendants falsely alleged to be the legal and beneficial copyright owners of videos which Johnson created and displayed on her Online Platforms; and (5) all of the allegations asserted in the Copyright Action were false, save for the allegation that Johnson is the registered owner of her website and responsible for its content. (Doc. 76, ¶¶ 16, 81, 62, 60, 66–67, 69.)

aforementioned, Defendants' main concern is that Johnson will disseminate their financial information via her Online Platforms. (Doc. 117.) In support of their motion, Defendants represent that: (1) given their status as non-profit religious organizations, the Affirmance Order "poses a significant threat to [their] privacy expectations concerning their tax returns and other financial information"; (2) Johnson has little incentive to comply with the Nondisclosure Directive because she is judgment proof; (3) "there is little doubt that [Johnson] will violate the Court's directive in furtherance of her divine mission" to expose White's preaching as "a big money making scam" [sic]; and (4) "[o]nce Defendants' tax returns and other financial documents are disseminated on [the] Internet, the devastating harm to Defendants will be irreparable." (*Id.* at 1–2, 3.)

Contrary to Defendants' suggestion, the Court has more tools with which to sanction the violation of its Orders than monetary fines alone. Indeed, contempt of court—even by a judgment-proof party—is punishable by coercive incarceration or the initiation of criminal contempt proceedings. *See Citronelle-Mobile Gathering v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991); Fed. R. Crim. P. 42. Moreover, in spite of her *pro se* status, Johnson has consistently complied with the Court's rules and deadlines in prosecuting this action and shown no propensity to violate the Court's rulings. Hence the Court finds that Defendants have failed to demonstrate good cause for their noncompliance with the Contested Discovery Orders.

In a similar vein, the Court has numerous options at its disposal in selecting an appropriate sanction for Defendants' violation. For example, under Rule 37(b)(2)(A), if a party fails to obey a discovery order, the Court may, *inter alia*, issue orders:

(1) prohibiting the disobedient party from supporting or opposing designated claims or defenses; (2) rendering a default judgment against the disobedient party; or (3) treating the failure to obey the order as contempt of court.[10] Here, Defendants' failure to comply with the Affirmance Order has brought the instant action to a standstill. Notably, Johnson will be unable to move forward with her claim for punitive damages until such discovery is produced. Johnson is also unable to pursue any other information she hoped to glean from the information requested. Meanwhile, the discovery and dispositive motion deadlines are imminent. (*See* Docs. 56, 116.) Thus, having halted Johnson's prosecution of this action, Defendants will be prohibited from advancing their defenses or opposing Johnson's claim until they comply with the Court's discovery rulings or obtain favorable appellate relief. As such, Defendant may not proceed with any dispositive motions.

The Court also finds Defendants in contempt of court. Ordinarily, "[a] finding of civil contempt must be supported by clear and convincing evidence that the allegedly violated order was valid and lawful, the order was clear and unambiguous, and the alleged violator had the ability to comply with the order." *Fed. Trade Comm'n v. Leshin* (*Leshin I*), 618 F.3d 1221, 1232 (11th Cir. 2010) (quoting *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002). "Once this prima facie showing of a violation is made, the burden then shifts to the alleged contemnor to produce evidence explaining his noncompliance at a 'show cause' hearing." *Id.* (quoting *Chairs v. Burgess*,

---

[10] But a court may not impose a contempt sanction for the violation of an order directing a party to submit to a physical or mental examination. Fed. R. Civ. P. 37(b)(2)(A)(vii).

143 F.3d 1432, 1436 (11th Cir. 1998).

On these facts, the requisite prima facie showing is easily met. Though Defendants object to the findings and conclusions reached in the Contested Discovery Orders, such orders constitute a valid and lawful application of the Federal Rules of Civil Procedure, the Court's Case Management and Scheduling Order (Doc. 56), and both controlling and persuasive federal case law. (*See* Docs. 103, 115.) The Contested Discovery Orders also clearly and unambiguously direct Defendants to respond to delineated items in Johnson's discovery requests. (Doc. 103, pp. 9–15; Doc. 115.) And finally, all the information requested by Johnson is within Defendants' possession, thus demonstrating Defendants' ability to comply with the Court's discovery rulings.

Nonetheless, the unique posture of the current action warrants a slight deviation from the ordinary contempt framework. In one fell swoop, the Motion for Contempt: (1) notifies the Court of Defendants' noncompliance with the Affirmance Order; (2) requests that the Court find Defendants in contempt; and (3) explains Defendants' reasons for noncompliance. (Doc. 117.) Additionally, the November 22 Order warned Defendants of the possibility of sanctions for noncompliance. (Doc. 103, p. 15.) The foregoing, therefore, obviates the need for the issuance of a show cause order and a hearing.

Here, Defendants have admittedly refused to comply with the Court's discovery rulings based on their belief that: (1) such information is confidential and sensitive; and (2) Johnson will not adhere to the Court's Nondisclosure Directive. (Doc. 117.) While Defendants represent that they have partially complied with the Affirmance Order by

timely producing documents "sufficient to establish their respective net worth"[11] (*id.* at 117), the Eleventh Circuit is clear that "substantial, diligent, or good faith efforts [to comply] are not enough."[12] *Leshin I*, 618 F. 3d at 1232 ("We do not focus on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue."(quoting *Ga. Power Co. v. Nat'l Labor Relations Bd.*, 484 F.3d 1288, 1291 (11th Cir. 2007))). Moreover, the Court's own examination of the financial documents produced for New Destiny—which Johnson attached to her Motion for Default Judgment (Doc. 119-1)—reveals a woefully inadequate production. Thus, the Court finds Defendants in contempt for noncompliance with the Affirmance Order.

Turning now to the matter of sanctions, the Court is afforded "wide discretion in fashioning an equitable remedy in civil contempt." *Leshin I*, 618 F. 3d at 1237. "Sanctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Fed. Trade Comm'n v. Leshin* (*Leshin II*), 719 F.3d 1227,

---

[11] According to Defendants, they produced the following documents to Johnson: (1) Defendant White's personal tax returns from 2012–2015; (2) New Destiny's Statement of Activities Sheet from July 2013 to July 2016, which they contend are analogous to profit and loss statements given that, as a nonprofit entity, New Destiny does not file tax returns; and (3) PMM's Statement of Activities for 2014. (Doc. 117, pp. 9–10.)

[12] Seemingly at odds with such case law is the Eleventh Circuit's statement in *Watkin*s that "[p]arties subject to a court's order demonstrate an inability to comply only by showing that they have made in good faith all reasonable efforts to comply." 943 F.2d at 1301. As the Undersigned has already determined that Defendants had the ability to comply with the Contested Discovery Orders and chose not to, the Court finds that Defendants have not, in good faith, made all reasonable efforts to comply.

1235 (11th Cir. 2013) (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. Equal Emp't Opportunity Comm'n*, 478 U.S. 421, 443 (1986)). "Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of [the] complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent on the outcome of the basic controversy." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). "But where the purpose is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character or magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* In fixing the amount of a fine, the court must "consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *Id.*

After considering its various options, *see, e.g., Watkins*, 943 F.2d at 1304, the Court concludes that the imposition of a coercive daily fine is the most appropriate sanction under the circumstances.[13] The Court finds that neither coercive imprisonment nor criminal sanctions are warranted, and it is unable to fashion a compensatory fine where, as here, the *pro se* plaintiff will not incur attorney fees, and the merits of the instant action have not yet been resolved.[14] The Court has already determined that the

---

[13] Ironically, due to Defendants' contempt, the Court is unable to precisely assess Defendant's financial resources; nonetheless, in fashioning this sanction, the Court specifically contemplated the potential extent of the burden to Defendants.

[14] At this time, the Court also declines to impose Johnson's requested sanction of default judgment. However, the Court rejects Defendants' contention that their noncompliance was not willful. Defendants consciously decided not to fully comply

information requested may be properly compelled and that Defendants' refusal has impeded the progression of this action. And, as explained below, Defendants' contention that a contempt order is *per se* appealable is incorrect. Hence, going forwarded, the Court will require Defendant to pay Johnson $100.00 for each day of noncompliance with the Affirmance Order.[15]

Defendants are advised that this sanction is not appealable through ordinary channels. Relying on out-of-Circuit case law, Defendants mistakenly contend that "to appeal a discovery order, an individual or entity must first defy it and be held in contempt." (Doc. 117.) But a closer examination of controlling Eleventh Circuit authority reveals that "contempt orders resulting from discovery disputes are not appealable final orders unless the contempt order imposes a fine or penalty that may not be avoided by some other form of compliance." *Carpenter v. Mohawk Indus.*, 541 F.3d 1048, 1054 (11th Cir. 2008) (*citing Combs v. Ryan's Coal Co.*, 785 F.2d 970, 976 (11th Cir. 1986)), *aff'd*, 558 U.S. 100 (2009). "Thus, in order for [a] contempt order to be immediately appealable, there must be *both* a finding of contempt and a *noncontingent* order of sanction." *Id.* (citing *Combs*, 785 F.2d at 977). Because the Court has imposed coercive civil sanctions, such order would not be immediately appealable.[16]  However,

---

with the Affirmance Order; this is the definition of willful. *Willful*, BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "willful" as "[v]oluntary and intentional, but not necessarily malicious").

[15] Defendants may purge such sanction by compliance. *See Leshin I*, 618 F.2d at 1239 ("A contemnor need only be afforded the opportunity to purge his sanction of a fine, in the civil context, where a fine is not compensatory.").

[16] By definition, civil contempt sanctions are merely coercive and avoidable through obedience. *(Leshin II)*, 719 F.3d at 1235.

Defendants are free to seek mandamus review of the Contested Discovery Orders. *See id.* at 1053–54. Should Defendants chose to pursue this avenue in lieu of compliance, they will be fined $100.00 for each day that their petition is pending, the sum of which will be payable to Johnson upon any disposition in her favor.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' 12(b)(1) Motion to Dismiss Plaintiff's Third Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 86) is **GRANTED IN PART AND DENIED IN PART**.

   a. To the extent that Defendants seek dismissal of any purported federal claims under 17 U.S.C. § 512(f) or the First Amendment, the Motion is **GRANTED**. Such dismissal is without prejudice.

   b. In all other respects, the Motion is **DENIED**.

2. Plaintiff's embedded motion for leave to amend her Complaint (Doc. 95, pp. 14–15) is **DENIED**. [17]

3. Defendant's Motion for Friendly Contempt Order for Partial Non-Compliance with the Court's February 1, 2017 Discovery Order and Request for Oral Argument (Doc. 117) is **GRANTED IN PART** to the extent set forth in this Order. In all other respects, the Motion is **DENIED**.

4. Pursuant to Federal Rule of Civil Procedure 37(b)(1)(A)(ii), Defendants are

---

[17] Though the Court addressed the propriety of amendment in resolving the MTD, Johnson's request for leave to amend the Operative Complaint was improperly raised. "Filing a motion is the proper method to request leave to amend a complaint"; thus, Johnson should not have embedded this request in her response to the MTD. *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999).

PROHIBITED from further advancing their defenses or opposing Plaintiff's claim. As such, Defendants may not answer the Complaint or file dispositive motions in this action until the contested discovery is produced or the Contested Discovery Orders are overturned.

5.  On or before Monday, **April 3, 2017**, Defendants are **DIRECTED** to either: (a) comply; or (b) inform the Court of how they intend to proceed. If receipt of such notice reveals continued contemptuous conduct, then the Court will provide further direction as to the payment of contempt fines to Johnson.

6.  Plaintiff Shirley Jn Johnson's Amended Verified Motion for Contempt and Sanctions (Doc. 119) is **DENIED WITHOUT PREJUDICE**. Should Defendants pursue appellate relief without success, the Court will reconsider a motion for default judgment on the issue of liability.

7.  Defendants' Unopposed Request for Ruling on Defendants' Motion to Dismiss Third Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 128) is **TERMINATED AS MOOT**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 23, 2017.

ROY B. DALTON JR.
United States District Judge

Copies to:

*Pro Se* Party

Counsel of Record