UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SHIRLEY JN JOHNSON,**

      **Plaintiff,**

v.                                                             Case No:   6:15-cv-1698-Orl-37GJK

**NEW DESTINY CHRISTIAN CENTER
CHURCH, INC., PAULA MICHELLE
WHITE MINISTRIES, INC., PAULA
MICHELLE WHITE, and
RESURRECTION LIFE THC, INC.,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS NEW DESTINY CHRISTIAN CENTER CHURCH, INC., PAULA MICHELLE MINISTRIES, INC. AND PAULA MICHELLE WHITE WITH SUPPORTING MEMORANDUM OF LAW (Doc. No. 152)** |
| **FILED:** | **July 10, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

On July 10, 2017, Plaintiff Shirley Jn Johnson ("Johnson") filed her Motion for Entry of Default Judgment Against Defendants New Destiny Christian Center Church, Inc., Paula Michelle Ministries, Inc., and Paula Michelle White (the "Motion"). Doc. No. 152. Johnson asks that the Court strike New Destiny Christian Center Church, Inc., Paula Michelle Ministries, Inc., and Paula

Michelle White's (collectively, the "Defendants")[1] Answer and Affirmative Defenses, enter a default judgment against Defendants, and award Johnson all the relief requested in the Third Amended Complaint for Defendants' continued failure to comply with the Court's discovery orders. *Id.* at 24. She also requests that Defendants "pay monetary sanctions accumulated from May 30, 2017 . . . ." *Id.* In the alternative, Johnson requests that she be permitted "to reply to Defendants' Affirmative Defenses and extend the time, if necessary, to allow Johnson to timely submit a motion for summary judgment." *Id.*

On July 24, 2017, Defendants filed their response to the motion (the "Response"). Doc. No. 154. After considering the Motion, the Response, and the history of this litigation, it is recommended that Defendants' Answer and Affirmative Defenses be stricken and that a default judgment as to liability be entered against them.

I.     **PROCEDURAL HISTORY**.

This case derives from a prior action for copyright infringement brought by Paula White Ministries ("PWM") against Johnson in Case No. 6:14-cv-497-Orl-31DAB (M.D. Fla. Mar. 27, 2014) (the "Copyright Action"). Doc. No. 1. On January 22, 2015, in the Copyright Action, the Honorable Gregory J. Presnell entered an order granting PWM's motion to dismiss its claims with prejudice. Doc. No. 40 (6:14-cv-497-Orl-31DAB). The Court's Order provides Johnson can "pursue affirmative relief against [PWM] for malicious prosecution . . . by filing a separate complaint." *Id.* On October 8, 2015, Johnson filed a pro se complaint in the instant action alleging malicious prosecution against New Destiny Christian Center Church, Inc. ("New Destiny"), Paula Michelle Ministries, Inc. ("PMM"), which is also known as PWM, and Paula Michelle White

---

[1] The Motion does not ask for sanctions against defendant Resurrection Life THC, Inc. ("Resurrection Life"). Thus, when referring to "Defendants," Resurrection Life is not included.

("White"). Doc. No. 1. On August 18, 2016, Johnson filed a Third Amended Complaint seeking relief against New Destiny, PMM, White, and Resurrection Life. Doc. No. 76. Johnson seeks to pierce the corporate veil of PMM, New Destiny, and Resurrection Life based on her assertion that "through their directors and agents" they "initiated and actively participated in an illegal scheme to fraudulently convey or conceal [New Destiny and PWM's] assets so that they could not be reached by this lawsuit." *Id.* at ¶¶ 15–57.

On April 20, 2016, Johnson propounded interrogatories and requests to produce on Defendants (the "Discovery Requests"). Doc. No. 73-4. On July 1, 2016, Johnson moved to compel responses to the Discovery Requests. Doc. Nos. 67-72. On August 19, 2016, the undersigned entered an order partially granting Johnson's motions to compel (the "August 19 Order"). Doc. No. 78. The Court found that Defendants waived their objections to the Discovery Requests, except as to any information protected by privilege. *Id.* at 4-6. On August 30, 2016, Defendants moved for relief from the August 19 Order (the "Motion for Relief"). Doc. No. 83. The Motion for Relief was granted in part on November 22, 2016 (the "November 22 Order"), limiting the scope of many of Johnson's Discovery Requests and denying others. Doc. No. 103 at 9–13. In the November 22 Order, the Court left intact its finding in the August 19 Order that Defendants waived their objections to the interrogatories. *Id.* at 3, 4, 5, 7. The November 22 Order denied the Motion for Relief in all other respects and directed Defendants to serve answers to certain interrogatories and produce discovery responsive to Johnson's requests for production. *Id.* at 14–15. Defendants were directed to answer the interrogatories on or before December 2, 2016, and produce documents responsive to Johnson's requests on or before December 19, 2016. *Id.* Defendants were also warned that failure to comply with the November 22 Order may result in sanctions. *Id.* at 15.

Defendants filed objections to the November 22 Order. Doc. No. 106. On February 1, 2017, the Honorable Roy B. Dalton Jr.: (1) overruled Defendants' objections; (2) affirmed the rulings in the November 22 Order; and (3) directed Defendants to comply with the November 22 Order on or before February 8, 2017 (the "Affirmance Order"). Doc. No. 115.

Defendants did not comply with the Affirmance Order; rather, on February 8, 2017, Defendants filed a motion for a "friendly contempt order," to trigger their appellate rights with respect to the discovery rulings (the "Motion for Contempt"). Doc. No. 117. On February 16, 2016, in response to the Motion for Contempt, Johnson moved for default judgment (the "First Motion for Default"). Doc. No. 119.

On March 23, 2017, Judge Dalton entered an Order on the Motion for Contempt and the First Motion for Default (the "Contempt Order"). Doc. No. 131. In the Contempt Order, Judge Dalton found that "Defendants' failure to comply with the Affirmance Order has brought the instant action to a standstill. Notably, [Johnson] will be unable to move forward with her claim for punitive damages until such discovery is produced. [Johnson] is also unable to pursue any other information she hoped to glean from the information requested." *Id.* at 18. He found Defendants in contempt of court for not complying with the Affirmance Order. *Id.* at 20. In making this finding, Judge Dalton commented on Defendants' "woefully inadequate production" of financial documents. *Id.*

Judge Dalton then determined that a coercive fine of $100 per day for each day that Defendants did not comply with the Affirmance Order was the most appropriate sanction. *Id.* at 21, 22. He noted that a compensatory fine was not appropriate because Johnson is appearing pro se and the merits of this litigation have not yet been resolved. *Id.* at 21. In a footnote, Judge Dalton stated the following: "At this time, the Court also declines to impose [Johnson's] requested

sanction of default judgment. However, the Court rejects Defendants' contention that their noncompliance was not willful. Defendants consciously decided not to fully comply with the Affirmance Order; this is the definition of willful."[2] *Id.* at 21-22 n.14. Defendants were cautioned that if they pursued mandamus review of the Contempt Order, the daily fine would continue to run while their petition was pending. *Id.* at 23. Defendants were also prohibited from opposing Johnson's claim or advancing their defenses until they produced the contested discovery. *Id.* at 23-24. In denying Johnson's First Motion for Default, the Court stated, "Should Defendants pursue appellate relief without success, the Court will reconsider a motion for default judgment on the issue of liability." *Id.* at 24.

Defendants chose to seek mandamus review of the Contempt Order, and on April 11, 2017, they filed a Petition for Writ of Mandamus with the Eleventh Circuit. Doc. Nos. 132, 136. The Court stayed the case pending the review. Doc. No. 133. On May 5, 2017, the Eleventh Circuit denied the Petition. Doc. No. 137.

On May 8, 2017, upon the Eleventh Circuit's denial, the Court lifted the stay and directed Defendants to pay the $4,600 contempt fine they had incurred thus far and "to *immediately* produce the information compelled in the Discovery Rulings" (the "Post Petition Order"). Doc. No. 138 at 2 (emphasis added). Defendants were warned that the contempt fine would continue to accumulate until they produced the discovery. *Id.*

On May 12, 2017, Defendants filed a "Notice of Compliance with Court's May 8, 2017 Order," in which they stated that they paid Johnson $4,600. Doc. No. 142 at ¶ 9. They did not state

---

[2] Judge Dalton noted that under Eleventh Circuit authority "'contempt orders resulting from discovery disputes are not appealable final orders unless [the order] imposes a fine or penalty that may not be avoided by some other form of compliance.'" Doc. No. 131 at 22 (quoting *Carpenter v. Mohawk Indus., Inc.*, 541 F.3d 1048, 1054 (11th Cir. 2008)).

that they produced the discovery. *Id.* On May 24, 2017, Judge Dalton entered an Order denying Johnson's motion for partial summary judgment and noting that "it is unclear whether Defendants have provided Johnson with the discovery they previously declined to produce." Doc. No. 144 at 2. Defendants were ordered to "notify the Court on or before Friday, May 26, 2017, whether they have produced such discovery and the date that it was produced. If not, Defendants must produce the information required by the Contested Discovery Orders on or before Tuesday, May 30, 2017, and provide certification to the Court at that time." *Id.*

On May 26, 2017, Defendants responded. Doc. No. 145. They stated "that as of May 26, 2017 they have not produced the contested discovery to Johnson. However, Defendants will do so by the Court imposed deadline of May 30, 2017 and provide certification to the Court at that time."[3] *Id.* at ¶ 11. On June 1, 2017, the Court entered yet another Order directing Defendants to pay Johnson an additional contempt fine, stating, "Obviously impervious to the financial sting of $100.00 per day, Defendants' nonchalant noncompliance with the May 8 Order has cost them an additional $2,200 fine—the sum of the Daily Fine that accrued from the date of the May 8 Order through May 30, 2017." Doc. No. 147 at 2.

On May 30, 2017, over one year after Johnson first requested the discovery and at least three Orders directing them to do so, it appeared Defendants produced the discovery at issue via U.S. Mail. Doc. No. 146.

## II.  ANALYSIS.

Under Federal Rule of Civil Procedure 37(b)(2), the Court has several options for imposing sanctions upon "a party or a party's officer, director, or managing agent" for failing to obey a

---

[3] No reason is given for Defendants' failure to timely comply with the Post Petition Order.

discovery order. Those sanctions include "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party . . . ." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).

"[A] default judgment sanction requires a willful or bad faith failure to obey a discovery order." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993). Negligence, a misunderstanding, or an inability to comply are not sufficient for a default under Rule 37. *Id.* "[T]he severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Id.*

Defendants failed to comply with the November 22 Order, the Affirmance Order, and the Post Petition Order. After the Eleventh Circuit denied the Petition, on May 8, 2017, Judge Dalton entered the Post Petition Order and ordered Defendants to "immediately" produce the discovery. Doc. No. 138 at 2. They did not. Despite the Court's Order directing Defendants to *immediately* produce the discovery, and despite filing a document titled "Notice of Compliance with Court's May 8, 2017 Order," Defendants still had not produced the discovery two weeks after the Post Petition Order directing them to do so. Doc. No. 145 at ¶ 11. On May 24, 2017, the Court ordered Defendants to clarify whether they had produced the discovery and ordered them to produce it on or before May 30, 2017, if they had not done so. Doc. No. 144 at 2. Defendants eventually produced some discovery on the May 30, 2017 deadline imposed by the Court in its fourth Order on the matter.

Not only did Defendants fail to comply with the Magistrate Judge's and District Judge's discovery orders, but their belated responses are evasive and incomplete, and Defendants misrepresent the facts in attempting to defend those responses. These combined actions demonstrate Defendants' willfulness.

First, New Destiny failed to comply with its discovery obligations. In responding to the discovery request directed to New Destiny for audited or unaudited financial net worth statements for 2014 and gross sales for books, CDs, DVDs, T-shirts and the sale of any other products for 2014 to the present, Doc. No. 103 at 10-11, Defendants produced three documents. Doc. No. 152 at 6. In response to Johnson's complaint that the documents were unaudited, Defendants argue: 1) Johnson requested "unaudited financial statements;" 2) New Destiny did not have the financial statement "audited in 2014;" and 3) therefore, the only documents available were New Destiny's unaudited financial statement for 2014. Doc. No. 154 at 10. The specific language in the November 22 Order, however, directed Defendants to produce "audited or unaudited financial net worth statements." Doc. No. 103 at 10. And Plaintiff's Request for Production No. 1-2 to New Destiny requested the following: "Copy of unaltered *audited* financial/net worth statements (or unaudited if audited not available) from 2013 through 2016." Doc. No. 73-4 at 33 (emphasis added). Therefore, to the extent Defendants' Response suggests that audited statements were not requested, it is incorrect. Moreover, if the 2014 financial statement was audited at any point in time, Defendants should have produced the audited financial statement.[4] Given New Destiny's overall finances, one would expect to see more financial records from the organization. In response to Johnson's implication that the three documents were the only ones produced, it is expected that New Destiny would clearly and unequivocally represent that all documents responsive to the request were produced. New Destiny stated no such thing and instead simply attempts to suggest the request only encompasses financial statements prepared in 2014. Thus, New Destiny's responses to the requests to produce are evasive and appear to be incomplete.

---

[4] It is customary to audit financial statements after the fiscal year for the time period represented on the statement.

New Destiny also incompletely and inaccurately answered Interrogatory No. 1-11, which asks whether New Destiny "*bought or sold* any property or real estate individually or jointly with any other person(s) or entities since 2013 to the present? If so, list each item individually, state the date purchased or sold and the value of each." Doc. No. 73-4 at 20 (emphasis added). New Destiny answered: "On April 4, 2014, [New Destiny] *mortgaged* 54 acres of real property. The real property included parcel 006, for a price of $1,350,168 and parcel 011, for a price of $409,832. On July 14, 2014, [New Destiny] sold real property for a price of $72,384. This included parcel 34-21-28-0000-00-011 and 34-21-28-0000-00-006." Doc. No. 152-2 at 4 (emphasis added). Johnson, however, produced a printout from the Orange County Property Appraiser's website detailing New Destiny buying these two parcels for $503,000 on March 14, 2014, and for $1,657,100 on April 4, 2014, respectively. Doc. No. 152 at 8; Doc. No. 152-3. Defendants do not explain the inconsistency between the answer and the Property Appraiser's records, nor why New Destiny used the phrase "mortgage" in its answer to an interrogatory that simply asked whether it had bought or sold property.[5] Thus, New Destiny's answer to the interrogatory is evasive and incomplete.

Second, Defendant PMM failed to comply with its discovery obligations. PMM produced bank statements in response to the November 22 Order, but unilaterally redacted information from them. Doc. No. 152-8. PMM did not receive authorization to redact information. The Court provided for the protection of Defendants' financial information in the Affirmance Order, in which Johnson was ordered to "refrain from any extrajudicial publication of the discovery material to any source and shall not disclose the information to any person or entity other than any expert

---

[5] New Destiny neither disputes the accuracy of the website nor states that it disclosed the purchases in responding to Interrogatory No. 1-11.

witness or subsequently retained counsel as necessary for the prosecution of this action." Doc. No. 115. To redact information from a document production, the party must object to producing the information and move for a protective order. That was not done here. Instead, after being ordered to produce the information, PMM deliberately obliterated large portions of the information without justification. Doc. No. 152-8. Given the fact that the financial disclosure at issue was ordered by the Court, PMM's decision to then unilaterally redact any portion of such information shows manifest disregard for the Court's Order. The redacted statements do not comply with the November 22 Order to produce PMM's bank statements for 2014 and the Post Petition Order.

PMM also gave inconsistent answers to Interrogatory No. 1-5, which asks the following: "List the names of the person(s), corporation(s) or other entities to which [PMM] assets were distributed upon its dissolution, and list the date of distribution, a description of the assets, the value and/or total amount(s) distributed to each corporation, person or other entity." Doc. No. 73-4 at 5. On June 20, 2016, Defendants answered by asserting that "[t]he assets of [PMM] remained with [PWM], which is a fictitious name now owned by New Destiny . . . ." Doc. No. 154 at 14. On May 30, 2017, however, Defendants answered the interrogatory thusly: "Upon dissolution, [PMM]'s assets were distributed to [New Destiny]." Doc. No. 154 at 14.

Defendants argue that the answers are consistent when read in conjunction because "[u]pon dissolution, [PMM]'s assets were distributed to PWM; PWM['s] trade name was subsequently registered to New Destiny." Doc. No. 154 at 14. Defendants' argument does not entirely explain the inconsistency. The June 2016 answer states that PWM is "a fictitious name now owned by New Destiny . . . ." Doc. No. 154 at 14. In contrast, the May 2017 answer simply states that the assets were transferred upon dissolution to New Destiny. Doc. No. 154 at 14. There is no explanation in the May 2017 answer regarding the inconsistency or an assertion that New Destiny

became the owner of PWM. Additionally, PMM stated in the June 2016 answer that its assets "remained" with PWM, but no explanation is given regarding what "remained" means. Doc. No. 154 at 14. There is no explanation of how or when the assets were acquired.[6] This fails to constitute a direct and clear answer to the interrogatory.

Also in the May 2017 answer, PMM provides a date of distribution of the assets, but only lists the value of office furniture and Dell workstations. Doc. No. 152-12. The May 2017 answer does not address or give values for the assets listed in the June 2016 answer of intellectual property, CDs, DVDs, and books. *Id.*; Doc. No. 152-11. The June 2016 and May 2017 answers are unclear and inconsistent.

Third and finally, White's responses to the discovery requests are incomplete. White produced tax returns for 2014 and 2015, but without accompanying schedules and documentation. Doc. No. 152 at 16. Defendants argue that Johnson's request did not ask for "accompanying schedules." Doc. No. 154 at 16.

Defendants' representation to the Court is false. Johnson's Request No. 1-1 asks for "[u]naltered complete copies of all state and federal income tax returns filed by you individually and/or jointly with other person(s), *including all accompanying schedules and attachments* and W-2 and 1099 forms for the years 2013 through 2015." Doc. No. 73-4 at 23 (emphasis added). The November 22 Order also directed White to produce "tax returns and attachments." Doc. No. 103 at 11. Thus, in addition to failing to comply with the discovery request, Defendants misrepresented the discovery request to the Court.[7]

---

[6] PMM filed its articles of dissolution on August 11, 2014. Doc. No. 149 at ¶ 7.
[7] Johnson also challenges the veracity of White's response to Interrogatory No. 1-5. Doc. No. 152 at 20-21. Interrogatory No. 1-5 asks White to "[l]ist all trucks, trailers, recreational vehicles, cars, motorcycles, airplanes, and watercraft or boats owned by you individually or jointly with any other person or entity, or in which you have an interest and provide a complete description and the value of each." Doc. No. 73-4 at 10. Among other things, Ms.

Defendants "have shown no evidence of inability to comply . . . ." *Malautea*, 987 F.2d at 1543. Instead, the evidence before the Court is that their refusal to comply is willful and done in bad faith. Defendants' continued refusal to produce the discovery after at least three Orders directing them to do so and then producing incomplete and inaccurate discovery, demonstrates that their failure is willful. The paucity of financial information produced by New Destiny regarding Plaintiff's requests for its financial net worth statements for 2014 and gross sales for 2014 and thereafter convincingly demonstrates that it has withheld responsive information in bad faith. Given the considerable amount of funds New Destiny received in 2014,[8] it is simply not credible to believe there are no more documents responsive to the request at issue for 2014 and no other documents regarding gross sales for 2014 and thereafter. Additionally, the refusal itself is done in bad faith. Defendants made a blatant misrepresentation to the Court in opposing the Motion, evidencing a bad faith failure to comply with the Court's Orders directing Defendants to produce discovery.

Defendants' failure to fully and accurately produce the discovery prejudiced Johnson. The information at issue is not only relevant to Plaintiff's damages claims, but it goes to the heart of Plaintiff's claim that New Destiny, PMM, and Resurrection Life are alter egos of White or sham corporations established to hide assets. Doc. No. 76 at 5-11. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 141-43, 146-49 (2d Cir. 2010) ("district court did not commit any legal

---

White listed a 2013 Lamborghini Gallardo and estimated its current value as $60,000. Doc. No. 154 at 19. Johnson points out that "the online Kell[e]y Blue Book lists the current typical asking price of a 2013 Lamborghini Gallardo in Ms. White's zip code -32712 at $166,450 to $193,256." Doc. No. 152 at 21. Defendant responds that "several factors and considerations go into valuing a vehicle" and Johnson's "argument is entirely speculative and without merit." Doc. No. 154 at 19. Defendant does not list any factors or considerations that would make the vehicle's current value less than half of what a reputable source would value it at. Nor does Defendant contend that Johnson's representations regarding the Kelley Blue Book value are incorrect.

[8] An effort was made to redact the amounts appearing on the three pages New Destiny produced for gross sales and 2014 financial worth, which were filed with the Motion, but the amounts are nevertheless discernable. Doc. No. 152-1 at 1-3.

- 12 -

errors and its decision to impose default on all defendants was not an abuse of discretion" where all defendants, including alter ego defendants, failed to produce and intentionally destroyed financial documents responsive to order compelling discovery).

In March 2017, the Court pointed out the prejudice Johnson suffered, stating the following in the Contempt Order:

> Defendants' failure to comply with the Affirmance Order has brought the instant action to a standstill. Notably, Johnson will be unable to move forward with her claim for punitive damages until such discovery is produced. Johnson is also unable to pursue any other information she hoped to glean from the information requested.

Doc. No. 131 at 18. In the almost five months since then, the case has not progressed. Defendants did not produce the required discovery until May 30, 2017, and this production was inadequate, necessitating yet another motion and expenditure of court resources regarding this same discovery they were ordered to produce in November 2016. By failing to comply with the Court's Orders, Defendants have "halted Johnson's prosecution of this action . . . ." *Id.* Defendants' discovery tactics have thwarted the efficient and orderly process of this litigation.

Less drastic sanctions than striking Defendants' pleadings and entering a default judgment against them would not ensure compliance with the Court's Orders. The undersigned ordered the discovery produced (the November 22 Order), Judge Dalton ordered the discovery produced (the Affirmance Order and the Post Petition Order), and continuously accruing daily monetary sanctions were imposed to attempt to obtain compliance (the Contempt Order), all to no avail. Defendants' pattern of conduct shows disrespect for the Court's Orders. *Maus v. Ennis*, 513 F. App'x 872, 879 (11th Cir. 2013) (affirming sanction of default judgment for defendant's disrespect for the court's orders as shown by his evasive and willfully incomplete discovery responses, and

a lesser sanction would not compel defendant's compliance, as defendant had been admonished for his conduct and repeatedly warned that further misbehavior could result in a default judgment).[9]

Additionally, Defendants' unilateral redaction of responsive information and misrepresentation to the Court about the request to White for accompany schedules to her tax returns demonstrate that the Court cannot rely on Defendants for accurate information, thus impeding the Court's ability to manage this case. There is no evidence before the Court that sanctions less than a default judgment would change Defendants' behavior. Instead, in the absence of a default judgment, and based on Defendants' conduct during this litigation, the Court foresees an unending parade of discovery violations by Defendants.

Defendants received ample notice that they could incur a default judgment if their contumacious behavior continued. In the Contempt Order, the Court denied Johnson's First Motion for Default, but specifically stated, "Should Defendants pursue appellate relief without success, the Court will reconsider a motion for default judgment on the issue of liability." Doc. No. 131 at 24. The Motion clearly asks the Court to enter a default judgment under Rule 37. Doc. No. 152 at 1, 21-23, 24.

It is extremely rare for the discovery process itself to become a dominant force in a lawsuit and even more unusual for it to become the controlling or determinative issue, but this is the situation here. The Court strongly favors resolving cases on the merits. In determining whether the ultimate sanction of default judgment should be imposed, the Court must be extremely diligent in assuring itself that such a sanction is necessary to address the situation. This litigation has been pending since 2015, Johnson requested the discovery in April 2016, and the Court issued at least

---

[9] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

three Orders compelling the discovery. This discovery dispute began with a waiver of objections by failing to timely and sufficiently respond to discovery requests, which ultimately led to an order of production. New Destiny, PMM, and White failed on their discovery. The explanations and lack of explanations are telling, especially as Defendants never assert that they produced everything responsive to the requests. These discovery requests remain outstanding.

The same counsel represents all of the Defendants. At no time do Defendants represent that all responsive documents to the requests at issue have been produced.[10] Instead, Defendants made incomplete productions or responses, redacted information without any basis for doing so, and made a false representation about what was requested in the discovery. Viewing Defendants' and their collective counsel's conduct in regard to the discovery at issue leads to the firm conclusion that the conduct is more than incompetence or even gross negligence, but rather, is the product of willful obstruction and bad faith. The persistent problems with Defendants producing adequate and accurate information to these discovery requests lead to the inescapable conclusion that the problems are by design and the result of willful obstruction. Defendants' ongoing obstruction of the discovery process, their deliberate concealment of information via redaction, and their false representation to the Court, coupled with their recalcitrance in obeying the numerous Orders directing them to produce discovery, warrant the ultimate sanction.

### III. CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Motion (Doc. No. 152) be **GRANTED IN PART AND DENIED IN PART** as follows:

1. That the Motion be **GRANTED** as follows:

---

[10] Defendants do represent that they "have fully complied with all this Court's directives . . . ." Doc. No. 154 at 9. As demonstrated above, this is not the case.

    a. That the Answer and Affirmative Defenses (Doc. No. 149) as to New Destiny, PMM, and White be stricken;

    b. That a default judgment as to liability be entered against New Destiny, PMM, and White; and

    c. That New Destiny, PMM, and White pay Johnson's costs incurred in filing the Motion; and

2. In all other respects, that the Motion be **DENIED**.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on August 28, 2017.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties