UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHIRLEY JN JOHNSON,

     Plaintiff,

v.                                  Case No. 6:15-cv-1698-Orl-37GJK

NEW DESTINY CHRISTIAN CENTER
CHURCH, INC.; PAULA MICHELLE
MINISTRIES, INC.; PAULA MICHELLE
WHITE; and RESURRECTION LIFE
THC, INC.,

     Defendants.
_____

## ORDER

Desperate times call for desperate measures. This phrase tolls the knell for the
Court's task in the instant action: to determine whether the draconian sanction of default
judgment should be imposed against Defendants New Destiny Christian Center, Inc.
("**NDCC**"), Paula Michelle Ministries, Inc. ("**PMMI**"), and Paula Michelle White
("**PMW**") (collectively, "**Motion Defendants**"). On July 10, 2017, *pro se* Plaintiff Shirley
Jn Johnson ("**Johnson**") moved for default judgment against Motion Defendants. (Doc.
152 ("**Motion**").) They opposed on July 24, 2017. (Doc. 154 ("**Response**").)

On referral, U.S. Magistrate Judge Gregory J. Kelly issued a report on August 28,
2017, recommending that the Court grant in part Johnson's motion for default judgment.
(Doc. 166 ("**R&R**").) Specifically, he recommended that: (1) Motion Defendants' Answer
and Affirmative Defenses be stricken; (2) the Court enter a default judgment against

Motion Defendants; and (3) Motion Defendants pay Johnson's costs incurred in filing the Motion. (*Id.*) Motion Defendants then objected to the R&R on September 13, 2017 (Doc. 171 ("**Objection**")), and Johnson responded (Doc. 172.) The matter is now ripe for review. For the following reasons, the Court finds that the Objection is due to be overruled, the R&R is due to be adopted, and default judgment is due to be entered against Motion Defendants.

## I.    LEGAL STANDARDS

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

## II.    PROCEDURAL HISTORY

The story begins in 2014. On March 27, 2014, Paula White Ministries ("**PW Ministries**"), a self-described "global ministry in both vision and reach," filed a copyright infringement action against Johnson, a devotee in her own right, because Johnson operates a website and posts videos that seek to expose PMW as a false prophet. *See Paula White Ministries v. Johnson*, Case No. 6:14-cv-497-Orl31DAB, Docs. 1, 16. After Johnson engaged in the dispute (*see id.*, Doc. 32), PW Ministries ultimately retracted its claim and moved to dismiss the action with prejudice (*Id.*, Doc. 37.) PW Ministries' dismissal wish

was granted by U.S. District Judge Gregory A. Presnell (*Id.*, Doc. 40), but Johnson did not retreat. Instead, minding Judge Presnell's advice (*see id.*), Johnson commenced the instant action for malicious prosecution. (Doc. 1.) She sought punitive damages and other appropriate relief. (Doc. 76, p. 15.)

**A.    The First Wave of Motions to Compel Production and Subsequent Court Intervention**

Discovery commenced, and then, perhaps predictably given the litigants' history, all hell broke loose. On April 20, 2016, Johnson served requests for production of documents and interrogatories on Motion Defendants. (*See* Doc. 73-4.) Responses were due on May 20, 2016 (Docs. 67, p. 8; 69, p. 12; 70, p. 6; 71, p. 8; 72, p. 9). On May 20, 2016, only PMW individually submitted objections, not NDCC or PMMI. (*Id.*; *see also* Doc. 172-3, p. 8.) PMW e-mailed unverified responses to Johnson's requests and gave this response to nearly every request:

> Objection. [Johnson's] request is overboard in time and scope, unduly burdensome, and potentially prejudicial. The discovery requested is not relevant or reasonably calculated to lead to the discovery of admissible evidence absent Johnson proving [PMW's] liability. [Johnson's] request is an unwarranted fishing expedition into [PMW's] confidential financial information designed solely to harass, embarrass and/or annoy PMW. Subject to the objection, PMW will request a confidentiality agreement and/or protective order limiting the scope of the discovery and preventing the dissemination of [PMW's] financial information to any person, entity, or via any medium, including [Johnson's] YouTube channel and/or the internet.

(Doc. 73-5, pp. 1–9; 83-2; 83-3). No motion for a protective order was filed. In response, Johnson sent Motion Defendants a letter on May 27, 2016, stating that Motion Defendants' responses were deficient as undated, unsigned, and unverified, and requested corrected

responses by June 6, 2016. (Doc. 67, p. 8.) The letter also stated Johnson's opposition to the motion for a protective order. (Doc. 73, ¶ 10.)

Corrected responses were not forthcoming, rather, Motion Defendants e-mailed Johnson on June 6, 2016, to set up a conference call to discuss her concerns. (Doc. 67, pp. 8–9.) They spoke later that day and Motion Defendants agreed to review the requests and send amended responses by June 20, 2016, along with a proposed protective order. (*Id.*; *see also* Doc. 73, ¶¶ 12–13; 15.) Johnson agreed during the call to not disseminate any private information received in discovery. (*Id.* ¶ 14.)

On June 20, 2016, all Motion Defendants served signed responses to Johnson's requests—albeit well past the initial deadline of May 20, 2016. (Docs. 73-5, pp. 10–51.) For the most part, Motion Defendants repeated the objection previously made, verbatim, but occasionally provided other responses and produced some documents. (*See, e.g.*, Doc. 73-5, pp. 13–15.) This time, they included a proposed motion for a protective order. (Doc. 67; 73-1.) Upon reviewing the proposed motion, on June 23, 2016, Johnson stated that she opposed the motion but affirmed that she would refrain from disseminating information obtained through discovery. (Doc. 73, ¶ 16.) No motion for a protective order was filed.

Fed up, on July 1, 2016, Johnson filed six motions to compel Motion Defendants' responses to her requests based on their untimely, unverified, and largely non-responsive submissions. (Docs. 67–72.) She sought sanctions as well. (*See id.*) Five days later, Motion Defendants filed a motion for a protective order "to prevent the widespread dissemination, distortion, and misuses of [Motion] Defendants' confidential documents and financial information." (Doc. 73, ¶ 17.) They later filed untimely responses in

opposition to Johnson's six motions to compel. (Doc. 74.)

On referral, U.S. Magistrate Judge Gregory A. Kelly granted in part and denied in part all of Johnson's motions to compel, and denied Motion Defendants' motion for a protective order. (Doc. 78 ("**August 19 Order**").) First, for the motions to compel, Magistrate Judge Kelly found Motion Defendants' responses untimely. (*Id.* at 4.) As a consequence, Judge Kelly concluded that Motion Defendants waived their objections to Johnson's requests. (*Id.* at 5.) From there, he granted Johnson's motions to compel in part—directing Motion Defendants "to produce all documents responsive to the requests for production and serve complete answers to each interrogatory at issue." (*Id.*) He excluded from this directive "any information protected from discovery on the basis of privilege," and ordered Motion Defendants "to produce a privilege log" for "any responsive privileged information." (*Id.*) He denied Johnson's request for sanctions. (*Id.* at 6–7.)

Second, Magistrate Judge Kelly denied Motion Defendants' request for a protective order. (*Id.* at 7.) He found the motion untimely because "a party seeking a protective order from responding to written discovery requests must file the motion for protective order prior to the date its responses to discovery are due." (*See id.* (citing *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 222 (N.D. W. Va. 2007).) He also determined that Motion Defendants failed to establish good cause to enter a protective order over their financial information, personnel records, and other identifying information. (*Id.* at 8.) And he found no support to enter Motion Defendants' proposed confidentiality agreement. (*Id.* at 9.) He therefore ordered Motion Defendants to "produce all documents" responsive to

Johnson's documents requests and "serve full and complete answers" to her interrogatories by September 9, 2016. (*Id.* at 9–10.) That should have settled things.

**B.      Second Wave of Motions to Prevent Producing Discovery**

Undeterred, eleven days later, Motion Defendants filed a motion seeking relief from the August 19 Order. (Doc. 83 ("**Relief Motion**").) Concurrently, they filed a motion to stay discovery, which Magistrate Judge Kelly granted in part. (Docs. 84, 90.) In the Relief Motion, Motion Defendants asserted that their untimely response to Johnson's motions to compel was excusable neglect attributable to a calendaring error. (Doc. 83, pp. 7–8.) They sought consideration of their objections to Johnson's requests for discovery on the merits and reasserted their request for a protective order. (*Id.* at 8–22.)

On review, Magistrate Judge Kelly found that the calendaring error constituted excusable neglect and vacated portions of the August 19 Order granting Johnson's motion to compel documents. (Doc. 103, pp. 6–7 ("**Relief Motion Order**").) But he found no excusable neglect for Motion Defendants' failure to timely serve verified answers to Johnson's interrogatories and move for a protective order. (*Id.* at 7.) He then considered the merits of Motion Defendants' objections and determined that Johnson was entitled to discover some financial information because she demonstrated a reasonable basis for the recovery of punitive damages on her malicious prosecution claim. (*Id.* at 8.) He made specific rulings on each of Johnson's documents requests, which significantly winnowed down Motion Defendants' discovery obligations.[1] (*Id.* at 9–14.) He also noted that Motion

---

[1] Specifically, for Johnson's six requests from PMMI, Magistrate Judge Kelly granted in part and denied in part Johnson's motion to compel for five of them, and

Defendants could redact certain information, such as Social Security numbers, Taxpayer Identification Numbers, and dates of birth, from these documents. (*Id.* at 14 n.6.) He gave Motion Defendants until December 19, 2016, to produce the documents, as abbreviated, and until December 2, 2016, to "serve full and complete" responses to Johnson's outstanding interrogatories. (*Id.* at 14–15.) At this point, just about seven months had passed since Motion Defendants' initial discovery deadline of May 20, 2016. (*See* Docs. 67, p. 8; 69, p. 12; 70, p. 6; 71, p. 8; 72, p. 9).

**C.      Appeals of Relief Motion Order**

**1.      Motion Defendants seek district court review**

Still dissatisfied, on November 20, 2016, Motion Defendants moved to stay the Relief Motion Order and sought leave to appeal Magistrate Judge Kelly's ruling to the Undersigned. (Docs. 104, 105.) They then filed an objection to the Relief Motion Order, raising several arguments. (Doc. 106.) The Court granted the stay motion (Doc. 107), and Johnson then responded in opposition to Motion Defendants' objection (Doc. 109).

Ultimately, the Court overruled Motion Defendants' objection and affirmed the Relief Motion Order. (Doc. 115 ("**Affirmance Order**").) In this order, the Court directed Motion Defendants "to comply with the directives in the [Relief Motion Order] on or before February 8, 2017." (*Id.*) Additionally, the Court ordered, "[Johnson] shall refrain

---

denied it for the sixth. (Doc. 103, pp. 9–10.) For Johnson's eleven requests from NDCC, Magistrate Judge Kelly granted in part and denied in part Johnson's motion to compel for four of them, granted one, and denied six. (*Id.* at 10–11.) For Johnson's nineteen requests from PMW, her motion to compel was granted in part and denied in part six requests, and denied thirteen. (*Id.* at 11–14.)

from any extrajudicial publication of the discovery material to any source and shall not disclose the information to any person or entity other than any expert witness or subsequently retained counsel as necessary for the prosecution of this action." (*Id.*) The Court then noted that "[v]iolation of this portion of the Court's order will result in sanctions." (*Id.*) In a separate order, the Court also lifted the stay on discovery and ordered discovery to be completed by March 24, 2017. (Doc. 116.)

### 2. Motion Defendants seek appellate court review

Steadfast in their resolve to withhold this information, on February 8, 2017, Motion Defendants filed a motion seeking a "friendly contempt order" for partial non-compliance with the Affirmance Order to instigate further appellate review. (Doc. 117 ("**Friendly Contempt Motion**").) In the Friendly Contempt Motion, Motion Defendants resurrected the same arguments from their objection to the Relief Motion Order (*compare* Doc. 117 *with* Doc. 106), namely that the disclosure of financial information to Johnson posed a significant threat to Motion Defendants' privacy. (Doc. 117, p. 1.) Motion Defendants acknowledged the Court's directive to Johnson concerning the publication of any documents from discovery, with its corresponding threat of sanctions, but stated "there is little doubt Johnson will violate the Court's directive in furtherance of her divine mission." (*Id.* at 2.) Accordingly, they sought to appeal the Affirmance Order, stating that they would not fully comply with it and sought contempt sanctions on the belief that this would "trigger their appellate rights." (*Id.* at 4.) Johnson opposed, filing a motion to hold Motion Defendants in contempt and sanction them for non-compliance by issuing a default judgment. (Doc. 119.)

On review, the Court found that Motion Defendants: (1) had not shown good cause for their failure to comply with the Affirmance Order; and (2) were in contempt of court. (Doc. 131, pp. 17–20 ("**Contempt Order**").) Sanctions were therefore warranted, so the Court imposed a coercive daily fine of $100 for each day of noncompliance with the Affirmance Order. (*Id.* at 21–22.) Because such sanctions are not considered immediately appealable orders under controlling precedent, the Court advised Motion Defendants that they could seek appellate review through mandamus. (*Id.* at 22–23.) Motion Defendants' compliance, however, could mitigate the need for sanctions. (*Id.*) The Court set a deadline of April 3, 2017, for Motion Defendants' compliance or notification of how they intended to proceed. (*Id.* at 24.)

Importantly, in the Contempt Order, the Court declined to impose the sanction of default judgment on Motion Defendants "[a]t this time," as Johnson requested. (*Id.* at 21 n.14.) In so doing, the Court stated, "[h]owever, the Court rejects [Motion] Defendants' contention that their noncompliance was not willful. Defendants consciously decided not to fully comply with the Affirmance Order; this is the definition of willful. *Willful*, BLACK'S LAW DICTIONARY (9th ed. 2009) (defining 'willful' as '[v]oluntary and intentional, but not necessarily malicious')." (*Id.* at 21–22, n.14.) The Court also stated, in the decretal, "[s]hould [Motion] Defendants pursue appellate relief without success, the Court will reconsider a motion for default judgment on the issue of liability." (*Id.* at 24.) From this, Motion Defendants were notified about the spectrum of appropriately available sanctions for their resolute failure to comply with the Affirmance Order.

### 3. Mandamus review

Choosing the path of non-compliance, Motion Defendants notified the Court on April 3, 2017, of their intention to seek mandamus review. (Doc. 132.) The Court then stayed the case and directed Motion Defendants to provide notice once they filed the mandamus petition, along with periodic status updates and notification once the appellate proceedings concluded. (Doc. 133.) Motion Defendants then submitted notice on April 11, 2017, that they had filed their mandamus petition with the U.S. Court of Appeals for the Eleventh Circuit. (Doc. 136.)

Three weeks later, on May 5, 2017, the Eleventh Circuit issued an order denying Motion Defendants' mandamus petition. (Doc. 137.) As explanation, the Eleventh Circuit stated that Motion Defendants "have not demonstrated that their right to the issuance of the writ is 'clear and indisputable.'" (*Id.* at 3 (citing *In re BellSouth Corp.*, 334 F.3d 941, 953 (11th Cir. 2003).)

### D. Final Order Directing Production of Contested Discovery

Following the Eleventh Circuit's ruling, the Court issued an order on February 8, 2017, that lifted the discovery stay and directed Motion Defendants: (1) to pay the $4,600 they incurred as a contempt fine; and (2) immediately produce discovery as required by the Relief Motion Order and the Affirmance Order. (Doc. 138 ("**Immediate Production Order**").) The Immediate Production Order reiterated the Court's previous admonition to Johnson—that she was prohibited from disclosing information gathered in discovery, and any violation would subject her to contempt sanctions. (*Id.* at 2.)

On May 12, 2017, Motion Defendants filed a "notice of compliance" with the

Immediate Production Order, stating that they had paid the $4,600 due. (Doc. 142.) Notably absent from this "notice of compliance" was any indication that Motion Defendants "immediately" produced the contested discovery as required. (*Id.*; *see also* Doc. 138.) The Court was left in the dark.

It soon became apparent that Motion Defendants had, yet again, failed to comply with the Immediate Production Order. On May 19, 2017, Johnson filed a motion for partial summary judgment. The Court denied Johnson's motion without prejudice as premature on May 24, 2017, in an order that also directed Motion Defendants to notify the Court by May 26, 2017, whether they had produced the contested discovery and the date of such production. (Doc. 144 ("**Final Production Order**").) If Motion Defendants had not yet produced the required discovery, they were directed to do so by May 30, 2017, and contemporaneously certify such production to the Court. (*Id.*)

On May 26, 2017, Motion Defendants notified the Court that they had not yet produced the contested discovery, but that they would do so by May 30, 2017. (Doc. 145.) On May 30, 2017, Motion Defendants filed a compliance notice, stating "[Motion] Defendants hereby notify the Court that on May 30, 2017, [Motion Defendants] produced the contested discovery to [Johnson], via U.S. mail." (Doc. 146, ¶ 12 ("**Certification of Production**").) For failing to immediately produce this discovery, Motion Defendants were fined an additional $2,200, which they paid. (Docs. 147, 148.) Finally, it seemed as though the case was back on track and could move past discovery.

E.    **Instant Proceeding**

1.    **Motions**

Regrettably, the matter was far from over. Contrary to their certification, Motion Defendants' dogged commitment to avoid compliance with the Court's orders did not waver. Six weeks after Motion Defendants filed their Certification of Compliance, Johnson filed the instant Motion, seeking default judgment against Motion Defendants. (Doc. 152.) In it, she alleged that: (1) Motion Defendants did not comply with the Immediate Production Order; (2) they only partially complied when they produced discovery on May 30, contrary to their Certification of Production; and (3) their purported compliance "failed to produce any meaningful financial worth documents." (*Id.* at 4–5.)

Specifically, Johnson took issue with: (1) NDCC's production of unaudited and unverified financial documents (*Id.* at 6–7); (2) NDCC's response to an interrogatory about property sold or bought since 2013 that failed to list parcels Johnson found from the Orange County Property Assessor in NDCC's name; (3) PMMI's production of unverified financial information that excluded information about assets belonging to PW Ministries, which became PMMI and is now owned by NDCC; (4) PMW's failure to produce tax returns with accompanying schedules and documentation; (5) PMW's failure to produce bank account statements; (6) PMW's failure to produce loan application records; (7) PMW's failure to produce pay stubs or income documentation; and (8) PMW's failure to produce corporate financial documents regarding other relevant entities. (*See id.* at 5–21.)

Johnson cited severe prejudice from Motion Defendants' willful non-compliance. (*Id.* at 23–24.) Based on this, Johnson maintained that sanctions were warranted—and because Motion Defendants had already been hit with the sting of monetary penalties and still not complied, default judgment was the only appropriate option. (*Id.* at 21–24.)

Motion Defendants responded, stating that they "have fully complied with all this Court's directives, and as a result, sanctions are not appropriate." (Doc. 154, p. 9.) They addressed each of Johnson's named inadequacies with their production, contesting them all. (*Id.* at 9–19.) Finally, they stated:

> "[Motion] Defendants have provided [Johnson] with numerous documents and information containing highly confidential and sensitive financial information. In doing so, [Motion] Defendants have fully complied with all Court directives and have responded to [Johnson's] requests truthfully and within the confines of the Federal Rules and Rules of this Court. [Motion] Defendants have not exhibited the requisite willful or bad faith failure to obey the Court's recent discovery Orders. Therefore, sanctions are entirely inappropriate under the circumstances, and [Johnson's] Motion must be denied. [Motion] Defendants request that the Court end [Johnson's] incessant and unjustified attempts to obtain information that she is not entitled to and require that the parties proceed with litigating the liability of this case, on its merits.

(*Id.* at 20.)

### 2. R&R

On referral, Magistrate Judge Kelly issued a comprehensive R&R. (Doc. 166.) Upon considering "the Motion, the Response, and the history of this litigation," he recommended entering a default judgment as to liability against Motion Defendants. (*Id.* at 2.) His recommendation was grounded on several findings that collectively demonstrated Motion Defendants' willful or bad faith failure to obey a discovery order, that is, the standard for a default judgment sanction. (*Id.* at 7 (citing *Malautea v. Suzuki*

*Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993)).)

First, Magistrate Judge Kelly found that Motion Defendants failed to comply with the Relief Motion Order, the Affirmance Order, and the Immediate Production Order. (*Id.* at 7.) Next, he found that Motion Defendants' "belated responses are evasive and incomplete" and they "misrepresent[ed] the facts in attempting to defend their responses." (*Id.*) Combined, this exuded "willfulness." *Id.* Magistrate Judge Kelly then detailed how each defendant's conduct merited default judgment. (*See id.* at 8–15.)

### a.    NDCC

For NDCC, Magistrate Judge Kelly found problematic the production of NDCC's 2014 unaudited financial statement—one document—without an accompanying representation that all documents responsive to the request were produced, to ensure full compliance. (*Id.* at 8.) Furthermore, Magistrate Judge Kelly found NDCC's answer to Interrogatory No. 1-11 "evasive and incomplete." (*Id.* at 9.) This interrogatory sought information on property NDCC bought or sold since 2013, and NDCC responded by listing a property mortgaged in 2014, and another property sold in 2014. (*Id.* (citing Doc. 152-2, p. 4).) Johnson pointed out an inconsistency between NDCC's response and Property Appraiser records, to which NDCC did not respond. (*Id.*) This lack of explanation, combined with the use of the word "mortgage" in its response, exhibited NDCC's evasion. (*Id.*)

### b.    PMMI

For PMMI, Magistrate Judge Kelly first found fault with PMMI's redaction of claimed sensitive information without seeking court approval or a protective order. (*Id.*

at 9–10.) Second, he found that PMMI gave inconsistent answers to Interrogatory 1-5, which asked PMMI to list where PMMI's assets were distributed upon its dissolution, with descriptive information of these assets. (*Id.* at 10 (citing Doc. 73-4, p. 5).) In an initial response, PMMI stated that its assets remained with PW Ministries which is a fictitious name now owned by NDCC. (Doc. 154, p. 14.) PMMI also stated that its assets "included office equipment, office supplies, intellectual property, CDs, DVDs, and books." (*Id.*) But PMMI later changed its response to the interrogatory, on May 30, 2017, by stating that PMMI's assets were distributed to NDCC upon dissolution, and that these assets included office furniture and Dell workstations." (*Id.*) For Magistrate Judge Kelly, this changed response "fail[ed] to constitute a direct and clear answer to the interrogatory," and was "unclear and inconsistent" when viewed against the previous answer. (Doc. 166, p. 11.)

### c.   PMW

For PMW, Magistrate Judge Kelly also found her responses incomplete. She produced tax returns for 2014 and 2015 without accompanying schedules and documentation. (*Id.* (citing Doc. 152, p. 16).) In defense, Motion Defendants stated that Johnson did not ask for those documents as well. (*Id.* (citing Doc. 154, p. 16).) But a quick look at Johnson's request, No. 1-1, belied Motion Defendants' response: Johnson clearly asked for unaltered copies of state and federal tax returns "including all accompanying schedules and attachments." (*Id.* (citing Doc. 73-4, p. 23.).) The Relief Motion Order also directed PMW to produce these documents. (*Id.* (Doc. 103, p. 11).) With this, Magistrate Judge Kelly found that not only did Motion Defendants fail to comply, but also they

"misrepresented the discovery request." (*Id.*)

Against this backdrop, Magistrate Judge Kelly found default judgment appropriate. (*See id.* at 12–15.) First, he concluded that Motion Defendants did not demonstrate an inability to comply; rather their pattern of conduct showed a willful refusal to comply that was done in bad faith. (*Id.* at 12.) Second, he found that Johnson was prejudiced by Motion Defendants' actions by bringing the litigation to a standstill by their refusal to produce information vital to her claim. (*Id.* at 13.) Third, he determined that less drastic sanctions would not be effective to ensure compliance, drawing on the fact that Motion Defendants still failed to comply after monetary sanctions were imposed. (*Id.* at 13.) Last, he found that Motion Defendants received ample notice of the possibility of default judgment, but nothing changed. (*Id.* at 14–15.) Indeed, their "contumacious behavior continued" with outstanding discovery requests remaining. (*Id.* at 14.)

So, despite "strongly favor[ing] resolving cases on the merits" and the extremity of imposing default judgment—reserved only for rare situations—Magistrate Judge Kelly concluded that Motion Defendants' "ongoing obstruction of the discovery process, their deliberate concealment of information via redaction, and their false representation to the Court, coupled with their recalcitrance in obeying the numerous Orders directing them to produce discovery, warrant[ed] the ultimate sanction." (*Id.* at 15.)

### 3. Objection

Motion Defendants objected to the R&R on September 13, 2017. (Doc. 171.) That same day, they furnished additional discovery to Johnson. (*See id.* at 2–3; *see also* Doc. 171-1.) NDCC and PMMI produced financial statements from PW Ministries for 2014, and

NDCC's consolidated statements from 2014. (Doc. 171-1.) NDCC also produced gross sales documents for PMMI from 2014 and PW Ministries from 2014–16. (*Id.* ¶ 12.) PMW produced the accompanying schedules for her 2014 and 2015 tax returns. (Doc. 171, p. 3.) And Motion Defendants served supplemental responses on Johnson, one of which valued PMMI's distributed assets. (*Id.* at 3, 21.) None of this discovery was disclosed prior to September 13, 2017.

In the substance of their objection, Motion Defendants addressed each of Magistrate Judge Kelly's findings. (*Id.* at 8–21.) First, to explain the gap between the Immediate Production Order, issued May 8, 2017, and their production on May 30, 2017, Motion Defendants posit that they were considering further appeals after the Eleventh Circuit denied their mandamus petition. (*Id.* at 9–10.) As such, they classify their "decision not to produce discovery" immediately, as ordered, as "proper." (*Id.* at 9.) They then contend that "[i]n no way were [Motion] Defendants disregarding the [Immediate Production Order]," but merely "choosing to exercise their legal right." (*Id.*)

Second, Motion Defendants attempted to rebut Magistrate Judge Kelly's conclusion that they have been recalcitrant in obeying discovery orders with a similar line of argument. (*Id.* at 10.) They stated that their non-responsiveness was "no more than [an] exercise [of] their fundamental [c]onstitutional right to Due Process," and provided their version of events leading up to the mandamus petition. (*Id.* at 10–12.) They summed up their actions as "all they have done with regard to the time line . . . is to exercise their [c]onstitutional rights to Due Process . . . , some of which have resulted in rulings largely in their favor." (*Id.* at 12.) With this, they maintained that no fault can be attributed to

them for non-compliance with discovery orders. (*See id.* at 10–12.)

Finally, Motion Defendants addressed each of Magistrate Judge Kelly's individual findings. (*Id.* at 12–21.) For NDCC, the thrust of their objection was that any issues with discovery could be addressed by additional discovery, through supplemental interrogatories or depositions, not by the imposition of a default judgment. (*See id.* at 15.) For PMMI, Motion Defendants admitted that they redacted some information without first seeking approval, but say that Johnson also unilaterally redacted information, so to sanction them for redacting would mean that Johnson should be sanctioned too. (*Id.* at 17–18.) They also corrected Magistrate Judge Kelly's finding that PMMI redacted "large portions of the information" from the produced bank statements, pointing out that Plaintiff did this when she filed these documents as exhibits. (*Id.* at 17.) Further, PMMI disputed Magistrate Judge Kelly's finding of inconsistency in its interrogatory responses, but then provided a supplemental answer with the Objection to clear things up. (*Id.* at 21.) Last, for PMW, Motion Defendants admitted that they previously did not produce PMW's tax return schedules, as asked, and that their response was "incorrect" to say that Johnson did not ask for these. (*Id.* at 21.) They stated that "[t]his was an unintentional omission," regrettable, but was corrected when they produced PMW's entire tax returns on September 13, 2017, with the Objection. (*Id.* at 22.) That production totaled 185 pages of previously undisclosed information. (*Id.*)

All in all, Motion Defendants maintained that: (1) their conduct was appropriate; (2) they "responded to the vast majority of [Johnson's] discovery requests; and (3) any lacking information was remedied as of September 13, 2017. (*Id.* at 23.) To remedy the

prejudice Johnson suffered in the interim, Motion Defendants suggest the Court push back the summary judgment deadline again, allow her to conduct additional discovery, and/or impose additional monetary fines—anything but default judgment. (*Id.* at 3.)

### 4. Response

Johnson opposed the Objection. (Doc. 172.) She contradicted Motion Defendants' assertions that they initially produced the "vast majority" of requested discovery in response to the Court's orders. (*Id.* at 3–10.) She cited various misrepresentations Motion Defendants made through the course of discovery. (*Id.* at 12–13.) She admitted, however, that she redacted portions of PMMI's documents when submitting them as exhibits to the Court. (*Id.* at 14–15.)[2] And, most importantly, she stated that she did not have adequate time to review Motion Defendants' midnight discovery, filed with the Objection, to determine if the production was, at last, complete. (*Id.* at 11.) Thus she reasserted the need for a default judgment, however, based on Motion Defendants' exhibited pattern of "willful, bad faith, deceptive, unethical, and dilatory conduct . . . throughout this litigation." (*Id.* at 18.)

With this encyclopedic overview of the impending state of affairs, the Court turns to the meat of the matter: whether the severe sanction of default judgment is appropriate.

### III. ANALYSIS

The Court reviews Johnson's request for default judgment de novo, since Motion

---

[2] The Court does not attribute the redaction of this information to Motion Defendants, and the issue of this particular redaction plays no role in the Court's default judgment analysis. *See infra* III.B.

Defendants objected to the R&R. *See* 28 U.S.C. § 636(b)(1). On de novo review, the Court

concludes that the Objection is due to be overruled, the R&R is due to be adopted, and a

default judgment is due to be imposed against Motion Defendants.

**A.     Default Judgment Standards**

Under Federal Rule of Civil Procedure 37, district courts have broad authority to

control discovery. *See Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999).

This authority includes the ability to fashion sanctions when parties fail to comply with

court orders. *See id.*; *see also* Fed. R. Civ. P. 37(b)(2)(A). Rule 37 suggests a non-

comprehensive list of potential sanctions to consider, based on a party's conduct at issue:

> [Sanctions] may include the following:
> (i)     directing that the matters embraced in the order or other designated
>         facts be taken as established for purposes of the action, as the
>         prevailing party claims;
> (ii)    prohibiting the disobedient party from supporting or opposing
>         designated claims or defenses, or from introducing designated
>         matters in evidence;
> (iii)   staying further proceedings until the order is obeyed;
> (iv)    dismissing the action or proceeding in whole or in part;
> (v)     rendering a default judgment against the disobedient party; or
> (vi)    treating as contempt of court the failure to obey any order except an
>         order to submit to a physical or mental examination

*Id.* at (b)(2)(A)(i)–(vii). Beyond this symphony of choices, Rule 37 opens up the possibility

of monetary penalties on the disobedient party. *Id.* at (b)(2)(C).

Among the potential sanctions available from Rule 37's non-exhaustive list, the

severity of consequences varies. Default judgment and dismissal are the harshest. *See In*

*re Se. Banking Corp.*, 204 F.3d 1322, 1335 (11th Cir. 2000). To impose either warrants a

finding of willfulness, bad faith, or fault in the party's failure to obey a discovery order.

*See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (citing *Societe Int'l v. Rogers*, 327 U.S. 197, 212 (1976) (dismissal standard); *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542–43 (11th Cir. 1985) (default judgment standard). Failure to comply based on simple negligence, misunderstanding, or a party's inability is not enough. *See Equal Emp't Opportunity Comm'n v. Troy State Univ.*, 693 F.2d 1353, 1357 (11th Cir. 1982) (dismissal context); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 (11th Cir. 1997) (default judgment). For default judgment, such a high showing is required to guard a party's right to due process. *See Hammond Packing Co. v. State of Ark.*, 212 U.S. 322, 349–352 (1909) (recognizing that default judgment, when issued improperly, impinges a party's right to due process). By the same token, the imposition of default judgment, when justified, *enforces* due process—disobedient parties must face consequences for their failure to comply. *Id.* at 351–52. Default judgment, therefore, "is the most awesome weapon in the Rule 37 arsenal." *Adolph Coors*, 777 F.2d at 1543.

Beyond finding willfulness, bad faith, or fault in a party's failure to comply, default judgment must be "just" under the circumstances. *See Malautea*, 987 F.2d at 1542–43. To that end, a court must find that no "less draconian" sanction was available—i.e., could be "equally effective" to ensure compliance. *Adolph Coors*, 777 F.2d at 1543. In this sense, "the decision to enter a default judgment ought to be a last resort." *Id.* at 1542.

## B.   Default Judgment is Warranted Here

Here, the Court is in the realm of last resort. Since April 20, 2016, this maelstrom has been brewing. This all could have been avoided had Motion Defendants followed basic discovery rules and Court orders. But Motion Defendants' conduct has placed the

Court in this position: issuing default judgment in lieu of deciding this action on its merits. Nevertheless, "[i]f the sanction of [default judgment] is not warranted by the circumstances of this case, then the Court can envisage no set of facts whereby that sanction should ever be applied." *See Nat'l Hockey League*, 427 U.S. at 641 (citation omitted).

First, the Court finds that Motion Defendants willfully, and in bad faith, failed to obey discovery orders. *See Adolph Coors*, 777 F.2d at 1542–43. Specifically, Motion Defendants did not comply with the Relief Motion Order, the Affirmance Order, and the Immediate Production Order—by choosing not to respond to Johnson's discovery requests for financial information as ordered. (*See, e.g.*, Doc. 117, p. 10 ([Motion] Defendants decline to produce anything beyond these financial documents, and submit that anything further would support [Johnson's] overzealous fishing expedition.").) Motion Defendants were well aware of their obligation to produce responsive information, and decided not to. (*See, e.g.*, Doc. 117, p. 4 ("[Motion] Defendants hereby notify the Court of their future partial non-compliance with its [Affirmance Order].").) They exhibited staunch defiance to *all* court orders, even after the Eleventh Circuit denied their petition for mandamus review and the Court imposed monetary sanctions for every day of non-compliance. (*See* Doc. 145 ("[Motion] Defendants hereby notify the Court that as of May 26, 2017 they have not produced the contested discovery to [Johnson].").) And—the cherry on top—on May 30, 2017, the day Motion Defendants purportedly produced all outstanding requests, "fully complied with all Court directives," and "responded to [Johnson's] requests truthfully," responsive information was still missing.

(*See* Doc. 154, p. 20.) This Certification of Production—by all means a blatant misrepresentation to the Court that Motion Defendants diligently, with good faith, finally complied—tips the scales here. By "willfully flout[ing] court ordered discovery," Motion Defendants' actions "demonstrate[] a flagrant disregard for the court and the discovery process." *See Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 481–82 (11th Cir. 1982).

Motion Defendants attempt to weave an absence of willfulness and bad faith finding with two threads of argument. First, they explain their non-compliance as "taking advantage of their legal rights" to appeal discovery rulings. (Doc. 171, p. 11.) This argument, however, has no place in the Court's sanction calculus. Of course, parties have the right to appeal, and the Court is not smiting Motion Defendants for exercising this right. The question here is whether, in making their choices, Motion Defendants elected willful disobedience of the Court's orders. Undoubtedly, they did. The Court indicated as much in its Contempt Order. (*See* Doc. 131, p. 21–22 n.4, ("[T]he Court rejects [Motion] Defendants' contention that their noncompliance was not willful. Defendants consciously decided not to fully comply with the Affirmance Order; this is the definition of willful.").) And Motion Defendants acknowledged that their decisions would have repercussions in their Friendly Contempt Motion—going so far as to ask the Court to sanction them for their non-compliance. (*See* Doc. 117, p. 10.) By their own admission, Motion Defendants knew their disobedience entailed sanctions, and still chose noncompliance. (*See id.*) This is willfulness.

Motion Defendants next thread of argument is that they produced "the vast majority of discovery they were ordered to, and have since cured any alleged ambiguities

or deficiencies in same." (Doc. 171, p. 3.) Not so, as a brief tour down memory lane reveals. From first blush, Motion Defendants decided not to fork over their financial information, no matter how small their obligation became. (*See* Doc. 103 (Relief Motion Order where Magistrate Judge Kelly significantly tapered Motion Defendants' document production obligations).) Motion Defendants did not comply after: (1) the Relief Motion Order; (2) the Affirmance Order; (3) the Contempt Order; (4) the Eleventh Circuit's denial of their petition for mandamus review; and (5) the Immediate Production Order. (*See* Docs. 103, 104, 106, 115, 117, 131, 132, 137, 142, 138.) Following these attempts, the Court issued the Final Production Order, giving Motion Defendants a date to certify compliance. (Doc. 144.) At this point, Motion Defendants attested that they produced all requested information—five tries later. (Doc. 154.) True to form, Motion Defendants still did not comply, even while representing that they had. This is bad faith.

Indeed, Motion Defendants did not comply until September 13, 2017—months after Johnson moved for default judgment against them. (*See* Docs. 152, 171, 171-1.) This was after Magistrate Judge Kelly recommended the sanction of default judgment against them—not a coincidence. (Doc. 166.) Then, seeking salvation, Motion Defendants produced *new* discovery. (*See* Doc. 171.) NDCC produced financial statements. (Doc. 171-1.) PMMI served supplemental answers that listed additional assets with their values. (Doc. 171, p. 21.) And PMW retracted her previous position that Johnson did not ask for accompanying schedules with her tax returns after checking the language of Johnson's interrogatory, to provide an additional 185 pages of tax documents. (*Id.* at 21–22.) The sheer fact that Motion Defendants retained additional discovery after their Certification

of Production shows that they did not make good faith efforts to comply with discovery and finally come to resolution. Neither partial nor belated compliance will baptize them at this stage.

Motion Defendants have exhibited a patent disregard for the Court's discovery orders and processes. Time and time again, Motion Defendants maintained that they did not have to comply with discovery, demonstrating a preordained belief that they were above this process. They have shown no inability to comply, since these documents were in their possession throughout the litigation. The Court has exhibited "remarkable patience" with Motion Defendants, granting opportunity after opportunity to comply, with notice that non-compliance could result in default judgment. (*See* Doc. 131); *see Adolph Coors*, 777 F.2d at 1541. The Court also tried lesser sanctions, imposing a monetary fine on Motion Defendants for each day of non-compliance. (Docs. 131, 147.) Nothing worked.

The Court now finds that the interests of justice require default judgment as the only effective remedy. Motion Defendants willfully failed to comply with the Court's discovery orders. Lesser sanctions would be ineffective. Indeed, the Court balks at Motion Defendants' suggestions to allow Johnson additional discovery, impose more monetary fines, or again push back the litigation calendar. (Doc. 171, p. 3.) Been there, done that—to no avail. Motion Defendants have made clear their refusal to comply with discovery orders, and they "richly deserve[] the sanction of a default judgment." *See Malautea*, 987 F.2d at 1542. Their willful disregard of discovery orders has prejudiced Johnson and brought this action to a standstill for eighteen months. Motion Defendants'

obstreperous conduct warrants the sockdolager of default. *See Nat'l Hockey League*, 427 U.S. at 643 ("[T]he most severe in the spectrum of sanctions must be available to the district court in appropriate cases."); *Adolph Coors*, 777 F.2d at 1543; (upholding default judgment when the defendants refused to turn over crucial documents from the get-go, claiming privilege, and the district judge "exhibited great sensitivity" to the defendants' concerns).[3]

"Refusal to abide by the law is not cost-free. No litigant and no attorney . . . may be permitted to exhibit such contumacious behavior without the risk of sanctions under Rule 37." *Adolph Coors Co.*, 777 F.2d at 1543. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). "When parties or lawyers substitute their own judgments for those [of] judges, we have no justice but chaos." *Adolph Coors Co.*, 777 F.2d at 1543.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    U.S. Magistrate Judge Gregory J. Kelly's Report and Recommendation (Doc. 166) is **ADOPTED**, **CONFIRMED**, and made part of this Order.

2.    Defendant New Destiny Christian Center, Inc., Paula Michelle Ministries, Inc., and Paula Michelle White's Objection (Doc. 171) is **OVERRULED**.

3.    Plaintiff Shirley Jn Johnson's Motion for Default Judgment (Doc. 152) is

---

[3] *See also United States v. Twenty-Nine Pre-Columbian & Colonial Artifacts From Peru*, 695 F. App'x 461, 466–67 (11th Cir. 2017); *In re Steffen*, 660 F. App'x 843, 845–46 (11th Cir. 2016); *Maus v. Ennis*, 513 F. App'x 872, 879 (11th Cir. 2013); *United States v. One 32' Scorpion Go-Fast Vessel*, 330 F. App'x 903, 905 (11th Cir. 2009).

**GRANTED IN PART AND DENIED IN PART:**

a. The Clerk is **DIRECTED TO STRIKE** the Answer and Affirmative Defenses as to Defendants New Destiny Christian Center, Inc., Paula Michelle Ministries, Inc., and Paula Michelle White. (Doc. 149).

b. The Court **ENTERS DEFAULT JUDGMENT** against Defendants New Destiny Christian Center, Inc., Paula Michelle Ministries, Inc., and Paula Michelle White.

c. Defendants New Destiny Christian Center, Inc., Paula Michelle Ministries, Inc., and Paula Michelle White are **DIRECTED** to pay Plaintiff's costs incurred in the filing the Motion.

d. In all other respects, the Motion is **DENIED**.

4. Plaintiff's Motion for Partial Summary Judgment (Doc. 162) is **DENIED IN PART AS MOOT** as to Defendants New Destiny Christian Center, Inc., Paula Michelle Ministries, Inc., and Paula Michelle White.

5. Defendants New Destiny Christian Center, Inc., Paula Michelle Ministries, Inc., and Paula Michelle White's Motions for Summary Judgment (Docs. 163, 165) are **DENIED AS MOOT**.

6. As to Defendant Resurrection Life THC, Inc., Plaintiff is **DIRECTED TO NOTIFY** the Court by **Tuesday, January 9, 2018**, whether she still wishes to pursue her claims against them (Doc. 76). If not, this action will proceed to trial only on Plaintiff's claims for punitive damages against Defendants New Destiny Christian Center, Inc., Paula Michelle Ministries, Inc., and

Paula Michelle White. (*Id.*)

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 2, 2018.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record
*Pro Se* Party