FILED

2018 APR 12  PM 3: 20

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

7   SHIRLEY JN JOHNSON, individual              CASE NO:

8        Plaintiff,                             6:15-cv-1698-Orl-37GJK

9              v.

10
11   NEW DESTINY CHRISTIAN CENTER CHURCH, INC.,
12   Florida not for profit corporation a/k/a Paula White Ministries

13
14   RESURRECTION LIFE THC, INC.,              **PLAINTIFF'S**
15   Florida non-profit (not for profit) Corporation   **VERIFIED TRIAL BRIEF**
16                                             **DAMAGES ONLY TRIAL**
17   PAULA MICHELLE MINISTRIES, INC.
18   Florida not for profit corporation a/k/a Paula White Ministries   **TRIAL DATE:**
19                                             **May 7, 2018**
20   PAULA MICHELLE WHITE, individually and in      **9:00 a.m.**
21   her official capacity as President, Director and Senior   **Courtroom 4A**
22   Pastor of New Destiny Christian Center Church, Inc.,
23   and as Director and Incorporator of Paula Michelle
24   Ministries, Inc., and as Director of Resurrection
25   Life THC, Inc. a/k/a PAULA MICHELLE CAIN

26        Defendants.
27   _____/

28

29

30
31   **PLAINTIFF SHIRLEY JN JOHNSON'S  VERIFIED TRIAL BRIEF**

32
33                          *Pro Se*

34
35                  *DAMAGES ONLY TRIAL*

36
37                       **April 11, 2018**

38
39

40
41
42
43
44

# **TABLE OF CONTENTS**

45  TABLE OF CONTENTS .................................................................................i

46  TABLE OF AUTHORITIES ...................................................................... ii-v

47  PLAINTIFF SHIRLEY JN JOHNSON'S TRIAL BRIEF ..................................... 1

48  I.   INTRODUCTION ................................................................................ 1

49  II.  PROPOSED FINDINGS OF FACT .......................................................... 1
50
51      Parties ........................................................................................... 1

52      The Copyright Infringement Action ................................................. 2

53      The Malicious Prosecution Action ................................................... 6

54      Prior proceedings .......................................................................... 7
55
56  III. PROPOSED CONCLUSIONS OF LAW ................................................. 10
57

58      Liability Has Been Established Against PMMI, NDCC, White................... 10

59      Plaintiff is Entitled to Recovery of All Damages................................. 12

60      Plaintiff is Entitled to Recover Non-Economic Compensatory Damages ................ 13

61      Plaintiff is Entitled to Recover Economic Compensatory Damages & Costs ........... 15

62      White is Jointly and Severally Liable as President, President of the Board,
63          And a Director of NDCC; Incorporator and a Director of PMMI ......................... 16

64      White is Personally Liable for Damages in Her Individual Capacity Even If
65          Plaintiff Settles the Claims Against the Corporations ................................ 17

66      Plaintiff is Entitled to Recover Punitive Damages From All Defendants................. 19
67
68      Evidence of Defendants' Net Worth / Financial Condition ......................... 25
69

70  CONCLUSION.................................................................................. 25
71
72
73
74

# TABLE OF AUTHORITIES

__CASES__                                                                                                       __Page__

*Adams v. Brickell Townhouse, Inc.,*
    388 So. 2d 1279, *1280 (Fla. 3rd DCA 1980) ........................................................... 18
(citing *Dade Roofing and Insulation Corp. v. Torres,* 369 So.2d 98 (Fla. 3d DCA 1979)

*Adler v. Segal*
    108 So. 2d 773,*775 (Fla. 3rd DCA 1959) ................................................................ 13

*Albright v. Oliver*
    510 US 266, *283 II (1994) ....................................................................................... 12,14

*Barker v. Tomlinson,*
    No. 8:05-CV-1390-T-27EAJ, 2006 WL 1679645, at *3 (M.D. Fla. Jun. 7, 2006) ... 12,14

*Beckwith Elec. Co. Inc. v. Sebelius,*
    960 F, Supp. 2d 1328, *1341 (M.D. Fla. Jun. 25, 2013) ........................................... 22
(quoting *Hobby Lobby,* 870 F. Supp. 2d at 1291).

*Bentley Motors Ltd. Corp. v. McEntegart,* ....................................................................... 18
    976 F. Supp. 2d 1297, *1315  (M.D. Fla., Sep. 30, 2013)

*Broadcast Music. Inc. v. PRB Productions. Inc.,*
    No. 6:13-CV-1917-ORL-31, 2014 WL 3887509, *2 (M.D. Fla. Aug. 7, 2014) .............. 12
(citing *Miller v. Paradise of Port Richey. Inc..*
    75 F.Supp.2d 1342, 1346 (M.D.Fla.1999).

*Buchanan v. Bowman,*
    820 F. 2d 359, *361 (11th Cir. 1987) ......................................................................... 10
citing *Nishimatsu Construction Co., Ltd. v. Houston National Bank,* 515 F.2d 1200, 1206
(5th Cir.1975) and *Cocklereece v. Moran,* 500 F.Supp. 487 (N.D.Ga.,1980)

*Burchell v. Bechert,* ....................................................................................................... 13
    356 So. 2d 377, *379 (Fla. 4th DCA 1978)
(citing *Adler v. Segal,* 108 So.2d 773, *775 (Fla. 3rd DCA 1959)

*Campbell v. Gov't Employees Ins. Co.,* ........................................................................... 21
    306 So. 2d 525, *531 [3] (Fla. 1974).

119
120   *Chanel, Inc. v. Italian Activewear of Florida, Inc.,*
121      931 F. 2d 1472, *1478 [12] (11th Circuit 1991)................................................18
122
123   *City of Salt Lake City v. Hollister,*
124      118 US 256, *262 (1886)................................................................................23
125   (quoting *Philadelphia, Wilmington and Baltimore Railroad Co. v. Quigley,* 21 How. 202)
126   (citing *Reed v. Home Savings Bank,* 130 Mass. 443, 445  and  *Copley v. Grover and Baker*
127   *Sewing Machine Co.,* 2 Woods, 494).
128
129   *Clemons v. State Risk Management Trust Fund,*
130      870 So. 2d 881, *883 (Fla. 1st DCA 2004) ....................................................23
131   (quoting *Johns-Manville Sales Corp., v. Janssens,* 463 So. 2d 242, 247 (Fla 1st DCA 1984).
132
133   *Cohen v. U.S.*
134      151 F. 3d 1338, *1339 (11th Cir.1998) ..........................................................23
135
136   *Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.,*
137      181 F. Supp. 3d 957, *974 (M.D. Fla.,  Feb. 22, 2016).....................................20
138
139   *Frow v. De La Vega,*
140      82 U.S. 552, *554 (1872);  21 L.Ed. 60, 15 Wall. 552.....................................11
141
142   *Johns-Manville Sales Corp. v. Janssens,*
143      463 So. 2d 242, *247 [1][2] (Fla. 1st DCA 1984) ....................................21, 23
144   (quoting *Campbell v. Gov't Employees Ins., Co.*).
145
146   *Kent Ins. Co. v. Schroeder,*
147      469 So. 2d 209, *210 [1] (Fla. 5th DCA, 1985)............................................22
148   (citing *Bankers Multiple Line Insurance. Company v. Farish,* 464 So. 2d 530 (Fla. 1985).
149
150   *Memphis Community School Dist. v. Stachura,*
151      477 US 299, *307 (1986)...............................................................................15
152
153   *Morgan Intern. Realty, Inc. v. Dade Underwriters Ins. Agency, Inc.,*
154      617 So. 2d 455, *459 (Fla. 3d DCA 1993).......................................................16
155
156   *Myers v. Central Florida Investments, Inc.,*
157      592 F. 3d 1201, *1219 (11th Cir. 2010) ......................................................21, 22
158
159   *Nodal v. Infinity Auto Insurance Company,*
160      No. 8:11-cv-1143-T-24MAP; 2011 WL 3297277 at *3 (M.D. Fla. Aug. 2, 2011)...........14
161   (citing *Ware v. U.S.,* 971 F. Supp. 1442, 1471 (M.D. Fla. 1997)
162

163   *Quartet Music v. Kissimmee Broadcasting, Inc.*
164     795 F. Supp. 1100, *1103 (M.D. Fla., May 19, 1992) ....................................... 16
165
166   *Rushing v. Bosse,* ............................................................................................... 19
167     652 So. 2d 869, *874  [10] [11] (Fla. 4th DCA 1995) (citing *S.H. Kress & Co. v.*
168   *Powell,* 132 Fla. 471, 180 So. 757 (Fla. 1938))
169
170   *Sabal Palm Condominiums of Pine Island Ridge Association, Inc. v. Fischer,*
171   No. 12-60691-Civ.; 2014 WL 988767 at *4 (S.D. Fla. Mar. 13, 2014). ................ 16
172
173   *S.H. Kress & Co. v. Powell,*
174     180 So. 757, 763 (1938) ........................................................... 15, 16, 19
175
176   *Special Purpose Accounts Receivable Co-op Corp v. Prime One Capital Company, L.L.C*
177     125 F. Supp. 2d 1093, *1105 (S.D. Fla. Dec. 19, 2000)............................... 17, 18
178   (citing *Scutieri v. Miller,* 605 So. 2d 972, 973 (Fla. 3d DCA 1992)
179
180   *TXO Production Corp. v. Alliance Resources Corp.,*
181     509 US 443, *460 (1993)............................................................................ 23
182
183   *United States v. Giles,*
184     538 F. Supp.2d 990, HN 12, (W.D. Tex. Mar. 14, 2008)................................ 12
185
186   *U.S. v. LaMacchia,*
187     871 F. Supp. 535,*539 (D. Mass. Dec. 28, 1994) ......................................... 23
188
189   *United States v. Siegel,*
190     536 F.3d 306, 317(B), 318 (4th Cir. 2008)................................................ 24
191   Cert denied., 555 U.S. 1087, 129 S.Ct. 770 (2008)
192
193   *Ware v. U.S.,*
194     971 F. Supp. 1442, *1470, *1471 (M.D. Fla. Jun. 21, 1997) ............... 13, 14, 15
195
196   *Winn & Lovett Grocery Co. v. Archer,*
197     126 Fla. 308, 327, 171 So. 214, 221 (Fla. 1936);......................................... 22
198   (citing  *St. Regis Paper Co. v. Watson,* 428 So. 2d 243 (Fla. 1983)
199
200
201   *W.R. Grace & Co.-Conn v. Waters,*
202     638 So. 2d 502, *503 [1], *504 (Fla. 1994)................................................. 22
203   (citing *White Constr. Co. v. Dupont,* 455 So. 2d 1026, 1028-29 (Fla. 1084);

204     **STATUTES**

205       **FEDERAL**

206       28 U.S.C. §1332 (a)(1) and (c)(1) ................................................................................ 2

207       28 U.S.C. §1391 (a)(1) and (b)(1)-(2) ........................................................................ 2

208       17 U.S.C. §506(a) .................................................................................................... 23

209       18 U.S.C. §2319 ...................................................................................................... 23

210       **FLORIDA**

211       §48.193 (1)(a)(1)-(2) 2015] ...................................................................................... 2

212       §617.0834(1)(b)3.(2)(a)(1)-(2) ................................................................................ 16

213       §768.73(1)(c) [2015] .............................................................................................. 20

214       §768.72(2)& (3)(a)(b) ............................................................................................ 20

215

216     **FEDERAL RULES OF EVIDENCE**

217       Rule 404(b)(2) ........................................................................................................ 24

218

219

220 **PLAINTIFF SHIRLEY JN JOHNSON'S TRIAL BRIEF**

221 ***DAMAGES ONLY TRIAL***

222        Plaintiff, Shirley Jn Johnson, *pro se*, ("Plaintiff") respectfully submits her Trial Brief

223 with Proposed Findings of Fact and Conclusions of Law pursuant to the Court's March 2,

224 2016 Case Management and Scheduling Order (Doc. 56). This is a damages only trial.

225 **I.**    **INTRODUCTION**

226        This Malicious Prosecution Lawsuit stems from an underlying Copyright

227 Infringement Lawsuit ("Copyright Action") in which Defendants leveled serious criminal

228 copyright infringement charges against Plaintiff, falsely alleging that Plaintiff knowingly

229 violated copyright laws by illegally copying, modifying and selling their copyrighted videos,

230 and profiting from the sale of their videos. Five (5) times throughout the Copyright

231 Complaint Defendants falsely claimed that they suffered substantial loss, and Defendants

232 prayed for $150,000 per [108] alleged infringement (totaling over $16 million), and a

233 permanent injunction against Plaintiff.

234 **II.**    **PROPOSED FINDINGS OF FACT**
235
236 **Parties**
237
238        1.    Plaintiff Shirley Jn Johnson ("Johnson") operates a website and You Tube

239 channel (theremnantsjnj) for the sole purpose of bringing truth and clarity to the scriptures,

240 while exposing false preachers, teachers, prophets, etc. who pervert the true meaning of Bible

241 scriptures through purposeful misinterpretation in an effort to manipulate viewers and

242 congregants into giving money so that the false preachers can live extravagant lifestyles.

243        2.      Paula White Ministries ("PWM") "is a global ministry in both vision and

244    reach.  Utilizing the Internet, Television, Radio, Literature, and Public Speaking as its

245    primary vehicles of communication.  It is guided by the God-inspired vision of Paula White

246    who founded it with a strong desire to see lives transformed for the better through

247    relationship with God."

248        3.      Paula White Ministries is a fictitious name by which Paula Michelle

249    Ministries, Inc.  ("PMMI") and New Destiny Christian Center Church, Inc. ("NDCC") did

250    and does business.

251        4.      Paula Michelle White a/k/a Paula Michelle Cain ("White") is the president

252    and a director of PMMI and NDCC.

253        5.      This Court has: 1) subject matter jurisdiction under 28 U.S.C. §1332(a)(1) and

254    (c)(1); 2) personal jurisdiction under 48.193 (1)(a)(1)-(2).  Venue is proper under 28 U.S.C.

255    1391(a)(1) and (b)(1)-(2).

256    **The Copyright Infringement Action**

257        6.      Paula White Ministries filed its unverified Copyright Infringement Lawsuit

258    ("Copyright Action") on March 27, 2014, titled, *Paula White Ministries  v. Johnson -  Case*

259    *No. 6:14-cv-00497-Orl-31DAB*.

260        7.      PMMI and NDCC did not disclose their true identities while prosecuting the

261    copyright infringement action, which is a violation of Federal Rule 17(a)(1) which states that

262    "[a]n action must be prosecuted in the name of the real party in interest."

263    8.    On May 2, 2014, two months into litigation of the Copyright Action, PWM

264    filed several false copyright complaints to You Tube which caused the termination of

265    Johnson's You Tube channel.

266    9.    On May 2, 2014, the fictitious name PWM was simultaneously canceled by

267    PMMI and registered to NDCC.

268    10.    On August 11, 2014, during the Copyright Action, PMMI dissolved without

269    notice to the Court or to Plaintiff, and NDCC continued to prosecute the Copyright Action in

270    the fictitious name PWM.

271    11.    On December 16, 2014, Johnson filed a motion for summary judgment.

272    12.    Seventeen days later on January 2, 2015, PWM filed a motion to voluntarily

273    dismiss the Copyright Action without prejudice.

274    13.    On January 12, 2015, the Court in its Order (Doc. 36), denied PWM's motion

275    to dismiss without prejudice, and ordered PWM to either answer Johnson's motion for

276    summary judgment or dismiss its case with prejudice.

277    14.    On  January 13, 2015, PWM filed its motion to dismiss with prejudice (Doc.

278    37).

279    15.    On January 20, 2015, Johnson opposed PWM's motion to dismiss (Doc. 38).

280    16.    On January 22, 2015, the Court ordered the Copyright Action, dismissed with

281    prejudice, *res judicata,* and permitted Johnson to file a malicious prosecution complaint

282    against PWM (PMMI, NDCC, PMW). (Doc. 40).

283    17.    Four (4) months after the Court Ordered the Copyright Action dismissed on

284    January 22, 2015 (Doc. 40), PWM, NDCC and White continued to make false copyright

285    infringement complaints to You Tube, which caused the removal of more videos from

286    Johnson's You Tube Channel.

287          18.    The Copyright Action was a SLAPP lawsuit filed on behalf of PMMI and

288    NDCC by their president, Paula Michelle White a/k/a Paula Michelle Cain as her personal

289    vendetta against Plaintiff, because White had been exposed by Johnson's videos.

290          19.    Six days after sending Plaintiff a Cease and Desist Letter, Defendant White

291    publicly expressed her intention to "inflict damage" to, and "be a menace" to Johnson. Ms.

292    White also stated, "I am in this battle, but I am going to win this battle. It's a fixed fight"

293    Five months later, White filed, or authorized the filing of the bogus copyright infringement

294    complaint against Johnson, which had been "fixed" with false allegations of copyright

295    infringement.

296          20.    Every allegation against Johnson was false, except for one. The one true

297    allegation was that Plaintiff is the owner of the "websites" and is responsible for their

298    content.

299          21.    Defendants' "hired gun" attorney simply went online, downloaded Case No.

300    6:14-cv-00337-GAP-KRS from the Middle District of Florida Court, and then duplicated

301    every allegation against Johnson from that copyright infringement complaint – verbatim.

302          22.    Five (5) times in their Copyright Infringement Complaint Defendants falsely

303    claimed that they had **substantial** loss, because Johnson had profited from the sale of their

304    copyrighted videos. PMMI, NDCC, and White (PWM) stated a prayer for $150,000 per [108]

305    alleged infringements – totaling over $16 million – even though in their Mandatory Initial

306    Disclosures in the Copyright Action, Defendants claimed no damages at all.

307    23.    The Copyright Action was filed as a personal vendetta of White, in retaliation

308    against Johnson because White was angry because she had been exposed by Johnson's

309    videos.   The Copyright Action was brought with the ulterior motive of using (or misusing)

310    the Judicial System to intimidate, punish, shame, harass and attempt to extort millions of

311    dollars from Johnson.

312    24.    As a direct and proximate result of PWM's, PMMI's, NDCC's and White's

313    willful and wanton actions, Johnson suffered psychological and emotional distress, mental

314    pain and anguish, the loss of capacity for the daily pursuits and enjoyment of life, had trouble

315    sleeping and suffered injury to her character and integrity, as well.

316    25.    Due to the criminal nature of the false copyright infringement claims, had

317    PWM's and White's evil scheme succeeded, Johnson would have suffered millions of dollars

318    in damages, and potentially faced five (5) or more years in prison for criminal copyright

319    infringement.

320    26.    As a direct and proximate result of Defendants PMMI/NDCC/PWM and

321    White's actions, for ten (10) months Johnson was plagued with thoughts of incarceration.

322    The fact that White stated that the fight had been fixed, and that she had never lost anything

323    in her jurisdiction, increased the fear and anxiety.

324    27.    For ten (10) months, Johnson was forced to set aside her own work to spend

325    countless hours researching and studying in order to defend against Corporate Defendants

326    PMMI/NDCC/PWM and White's false claims, which resulted in the loss of sleep.

327      28.  On many occasions Johnson's research lasted all night and well into the

328   following day which resulted in mental confusion, bouts of short-term memory loss and

329   forgetfulness.

330      29.  Johnson was compelled to expend money, time, energy and resources in order

331   to defend against Corporate Defendants PMMI/NDCC/PWM and White's unjustifiable and

332   baseless claims.

333   **The Malicious Prosecution Action**

334      30.  Johnson filed her Verified Malicious Prosecution Complaint (Doc. 1),

335   initially, on October 8, 2015 against Paula Michelle Ministries, Inc. ("PMMI") a/k/a Paula

336   White Ministries, New Destiny Christian Center Church, Inc. ("NDCC") a/k/a Paula White

337   Ministries ("PWM"), and Paula Michelle White ("PMW") a/k/a Paula Michelle Cain. Paula

338   White is being sued in her official capacity as President and a Director of both NDCC and

339   PMMI, and personally in her individual capacity.  Johnson's Second Amended Verified

340   Complaint was filed November 12, 2015. (Doc. 22).

341      31.  PMMI, NDCC and White filed their unverified Answer and Affirmative

342   Defenses (Doc. 34) on January 4, 2016, which was stricken by the Court.  PMMI, NDCC,

343   and White refiled their unverified Amended Answer and Affirmative Defenses (Doc. 48) on

344   January 26, 2016.

345      32.  Johnson filed her Verified Third Amended Complaint (Doc. 76) on August

346   18, 2016, adding Resurrection Life THC, Inc. ("RLTHC") (a wholly-owned subsidiary of

347   NDCC) as a defendant in this Action in order to reach the hidden assets of NDCC and White,

348   by piercing RLTHC's corporate veil.

349   33.   PMMI, NDCC, RLTHC and White filed a motion (Doc. 86) to dismiss

350   Johnson's Verified Third Amended Complaint (Doc. 76).   On March 23, 2017 (Doc. 131)

351   the Court granted in part and denied in part Defendants' motion to dismiss (Doc. 86).

352   34.   On July 3, 2017, PMMI, NDCC, RLTHC and White jointly filed their

353   unverified Answer and Affirmative Defenses (Doc. 149) to Johnson's Third Amended

354   Verified Complaint (Doc. 76).

355   **Prior Proceedings**

356   35.   On July 1, 2016, Johnson filed several motions to compel discovery (Doc. 67-

357   72) from PMMI, NDCC, and White which included Interrogatories and Requests for

358   Production of Documents.

359   36.   On August 19, 2016, (Doc. 78) Magistrate Judge Kelly, in part, granted

360   Johnson's motions to compel discovery.

361   37.   On August 30, 2016, PMMI, NDCC and White then filed a motion (Doc. 83)

362   requesting relief from Magistrate Kelly's November 22, 2016 Order (Doc. 103).

363   38.   Magistrate Kelly reconsidered his order and entered a subsequent Order (Doc.

364   103) granting relief in part – narrowing the scope of discovery.   However, PMMI, NDCC,

365   and White were still dissatisfied with the Magistrate's amended Order, and therefore filed an

366   appeal of the Magistrate's November 22, 2016 Order (Doc.103) to the District Court Judge

367   Dalton (Doc. 105),  and filed their Objection (Doc. 106) on December 6, 2016. Judge Dalton

368   entered an order (Doc. 115) overruling  Defendants' Objection,  and Ordered Defendants to

369   comply with the Magistrates November 22, 2016 Order (Doc. 103).

370        39.    PMMI, NDCC, and White ignored Judge Dalton's Order (Doc. 115) directing

371    them to comply with Magistrate Kelly's Discovery Order (Doc. 103).   Instead they filed a

372    Motion for Friendly Contempt (Doc. 119), to which Johnson opposed (Doc. 121).

373    Ultimately, Judge Dalton ruled that PMMI, NDCC and White were in contempt of Court, and

374    imposed a $100/day coercive fine, and also advised Defendants that they could seek

375    mandamus review if they so desired.

376        40.    On April 11, 2017, PMMI, NDCC, and White notified the Court that they had

377    filed a Petition for Mandamus Review with the U.S. Eleventh Circuit Court of Appeals.

378    (Doc. 136).   Their petition for Mandamus Review was denied and a Mandate was issued on

379    May 5, 2016 (Doc. 137).  Therefore, on May 8, 2016, Judge Dalton Ordered PMMI, NDCC,

380    and White to pay $4,600 to Johnson. (Doc. 138), and warned that the fine would continue to

381    accumulate until they obeyed the Magistrate's and the Court's Orders directing Defendants to

382    produce the discovery documents.

383        41.    PMMI, NDCC and White paid the $4,600 contempt fine, see (Doc. 142), but

384    still refused to produce the discovery documents as Ordered.  Therefore the Court imposed

385    an additional $2,200, which Defendants paid on June 2, 2016 (Doc. 148).

386        42.    PMMI, NDCC, and White still did not fully comply with the Magistrate's and

387    the Court's Discovery Orders, therefore on July 10, 2017, Johnson filed a Motion for Default

388    Judgment. (Doc. 152), to which PMMI, NDCC and White filed a Response in Opposition

389    (Doc. 154).  Magistrate Judge Kelly entered his Report and Recommendation for Default

390    Judgment (Doc. 166), finding that PMMI, NDCC and White had willfully disobeyed the

391    "Discovery Orders".  The Magistrate also found PMMI's, NDCC's and White's "ongoing

392     obstruction of the discovery process, their deliberate concealment of information via

393     redaction, and their false representations to the Court, coupled with their recalcitrance in

394     obeying the numerous Orders directing them to produce discovery, warrant[ed] the ultimate

395     sanction." The Magistrate also concluded that "The persistent problems with Defendants

396     producing adequate and accurate information to these discovery requests lead to the

397     inescapable conclusion that the problems are by design and the result of willful obstruction."

398          43.     On August 23, 2017 and August 25, 2017, respectively, Johnson, PMMI,

399     NDCC, RLTHC, and White filed motions for summary judgment (Docs. 162, 163, 164, 165),

400     which were mooted by the Default Judgment. Resurrection Life THC, Inc. ("RLTHC") was

401     subsequently released from this Action by way of summary judgment being rendered in its

402     favor (Doc 213) on April 3, 2018.

403          44.     On September 13, 2017, PMMI, NDCC, and White filed an Objection (Doc.

404     171) to the Magistrate's Report and Recommendation for Default Judgment, to which

405     Johnson responded (Doc. 172). On January 2, 2018 (Doc. 183), Judge Dalton struck

406     PMMI's, NDCC's, and White's Answer and Affirmative Defenses, and granted in part

407     Johnson's motion for Default judgment.

408          45. On January 25, 2018, the Court ruled that, "Because Plaintiff's punitive damages

409     claims are already proceeding to a bench trial, the Court will fold the requisite hearing on

410     Plaintiff's nominal and non-economic compensatory damages into that trial." (Doc. 192,

411     ¶2).

412      46.    On March 6, 2018 PMMI, NDCC and White filed a Motion for Settlement

413   conference (Doc. 198). A Settlement Conference was Ordered by the Court to be held on

414   April 19, 2018 (Doc. 205).

415      47.    On March 28, 2018, the Court entered an Order appointing Standby Counsel

416   for Johnson. (Doc. 211).

417      48.    On April 10, 2018, PMMI, NDCC and White filed a Motion to Take Judicial

418   Notice. (Doc. 221).

419  **III.**   **PROPOSED CONCLUSIONS OF LAW**

420   On January 2, 2018, the Court entered a Default Judgment establishing liability against

421   NDCC, PMMI and PMW. (Doc. 183). The Court's Orders on Default Judgment (Docs. 183,

422   192 and Doc. 214) have narrowed the issues for trial to damages only.

423  **Liability Has Been Established Against PMMI, NDCC and White**

424      1.    By virtue of the default judgment (Doc. 183), liability has been established

425   against NDCC, PMMI, and White for malicious prosecution. NDCC, PMMI, and White are

426   deemed to have admitted all of the well-pled allegations in Plaintiff's complaint, and may not

427   contest those facts on appeal. See *Buchanan v. Bowman, 820 F. 2d 359, *361 (11th Cir.*

428   *1987)*:

429           "Rule 37(d) of the Federal Rules of Civil Procedure, dealing with
430           sanctions used when a party fails to cooperate in discovery, allows the
431           Court to strike out pleadings and render default judgment against the
432           disobedient party. ... The effect of a default judgment is that the
433           defendant '... admits the plaintiff's well-pleaded allegations of fact, is
434           concluded on those facts by the judgment, and is barred from contesting
435           on appeal the facts thus established.' *Nishimatsu Construction Co., Ltd.*
436           *v. Houston National Bank, 515 F.2d 1200, 1206 (5th Cir.1975). The*
437           *liability of [Defendants] is not at issue. Such liability is well-pled in the*

438          <u>complaint, and is therefore established by the entry of default against</u>
439          <u>[them]</u>. See, *Cocklereece v. Moran*, 500 F.Supp. 487 (N.D.Ga.,1980)."
440
441  See also *Frow v. De La Vega*, 82 U.S. 552, *554 (1872); 21 L.Ed. 60, 15 Wall. 552:

442          ("The defaulting defendant is simply out of court and can take no farther part
443          in the cause. ... The defaulting defendant has merely lost his standing in court.
444          He will not be entitled to service of notices in the cause, **nor to appear in it**
445          **in any way. He can adduce no evidence, he cannot be heard at the final**
446          **hearing.** [emphasis added].)
447
448      2.      The well-pled allegations of fact that PMMI, NDCC, and White have admitted

449  to by way of the default judgment, and may not contest on appeal or at trial are as follows:

450      a)  Defendants [PMMI, NDCC, and White] instigated the copyright infringement

451  action against Johnson with malice, and with evil motive and intent (Doc. 76, ¶59);  b) the

452  copyright infringement action was brought in retaliation, and as a personal vendetta of Paula

453  White  (Doc. 76, ¶¶60, 73);  c) Paula White intentionally meant to injure Plaintiff  mentally,

454  emotionally, financially and physically, when she filed the bogus copyright infringement

455  complaint on behalf of NDCC/PMMI/PWM  (Doc. 76, ¶¶80, 81);

456  d) Defendants brought the copyright  action with the ulterior motive of using (or misusing)

457  the Judicial System to intimidate, punish, shame, harass and attempt to extort millions of

458  dollars  from  Plaintiff.    (Doc. 76 ¶77);  e)  as  a  direct  and  proximate  result  of

459  PMMI/NDCC/PWM  and  White's  intentional,  willful  and  wanton  actions,  Plaintiff  has

460  suffered, among other things,  unnecessary psychological and emotional distress, mental pain

461  and anguish, the loss of capacity for the daily pursuits and enjoyment of life, had trouble

462  sleeping and suffered injury to her character and integrity (Doc. 76, ¶¶82, 83, 87, 88);  f) Due

463  to the criminal nature of Defendants' false claims that Plaintiff profited from the sale of their

464  copyrighted  videos,  with  fear  and  anxiety,  Plaintiff  was  plagued  with  thoughts  of

465    incarceration (Doc. 76, ¶¶85,86) See *Barker v. Tomlinson*, No. 8:05-CV-1390-T-27EAJ,

466    2006 WL 1679645, at *3 (M.D. Fla. Jun. 7, 2006) (awarding actual damages for emotional

467    distress because Plaintiff genuinely feared creditor's threat of arrest and other criminal

468    punishment...and felt anxiety for the wellbeing of her young children);  g) Plaintiff was

469    compelled to expend money, time, energy and resources in order to defend against

470    PMMI/NDCC/PWM and Defendant White's unjustifiable and baseless claims.  See *Albright*

471    *v. Oliver*, 510 US 266, *283 II (1994) ("The common law of torts long recognized that

472    a malicious prosecution ... can cause unjustified torment and anguish—both by tarnishing

473    one's name and by costing the accused money in legal fees and the like").

474        3.    PMMI, NDCC, and White may only present evidence that contests the amount

475    of damages to be awarded.

476    **Plaintiff Is Entitled To Recovery Of All Damages**

477        4.    By virtue of the default judgment, NDCC, PMMI, and White are deemed to

478    have admitted that Plaintiff is entitled to the type of damages (i.e., nominal, economic, non-

479    economic compensatory and punitive damages as requested in her Third Amended Verified

480    Complaint (Doc. 76), See *United States v. Giles*, 538 F. Supp.2d 990, HN 12, (W.D. Tex.

481    Mar. 14, 2008) ("Relief prayed for in a complaint defines the scope of relief available on

482    default judgment. Federal Rules of Civil Procedure 54(c), 28 U.S.C.A."), but they do not

483    necessarily admit to the amount of the damages claimed. See *Broadcast Music, Inc. v. PRB*

484    *Productions, Inc.*, No. 6:13-CV-1917-ORL-31, 2014 WL 3887509, *2 (M.D. Fla. 2014)

485    (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F.Supp.2d 1342, 1346 (M.D.Fla.1999),

486    ("Although a defaulted defendant admits well-pleaded allegations of liability, allegations

487    relating to the amount of damages are not admitted by virtue of default").

488           5.      However, "[i]t is basic hornbook law that, in an action for malicious

489    prosecution, 'the plaintiff may recover all damages that are the natural and probable

490    consequences of the action complained of. Florida Jur. 2d, ... However, '[t]he damages must

491    be certain and proximate and not uncertain, contingent or speculative.'"" _Ware v. U.S._, 971

492    _F. Supp. 1442, *1470, *1471 (M.D. Fla. 1997)._ The Court in its Order (Doc. 131, pgs. 12-

493    13) has determined that Johnson's non-economic damages are not speculative, and the Court

494    also determined that Johnson had sufficiently pled a claim for punitive damages, as well.

495    Further, Plaintiff is not required by law to prove the amount of her damages when she is the

496    victim of a malicious prosecution. See _Burchell v. Bechert_, 356 So. 2d 377, *379 (Fla. 4th

497    _DCA 1978)_ ("There is also authority that a malicious prosecution is actionable per se; that is

498    that some damage is necessarily caused by the wrongful prosecution itself and does not

499    require specific proof as to amount.") (citing _Adler v. Segal_, 108 So.2d 773, *775 (Fla. 3[rd]

500    _DCA 1959)_ ("...[T]here is substantial authority that a malicious prosecution is actionable per

501    se, and 'certain kinds of damage necessarily follow from the wrongful prosecution itself, and

502    so will be assumed by the law to exist'").

503           6.      This Court has ruled that it will consider all of Plaintiff's damages claims, (i.e.

504    nominal, non-economic compensatory, and punitive). See Doc. 192 page 2). Defendants

505    have already stipulated to the economic damages Johnson incurred in defending the

506    Copyright Action – Case No. 6:14-cv-00497-Orl-31DAB.

507    **Plaintiff is Entitled to Recover Non-Economic Compensatory Damages**

508   7.   As a direct and proximate result of PMMI's, NDCC's, and White's malicious

509   prosecution, Johnson suffered injury to her character and reputation, hearing others spreading

510   rumors in the supermarket, department store and the law library, that she was being sued by

511   Paula White for copyright infringement because Johnson was selling her (Paula White's)

512   stuff.  Plaintiff did not infringe Defendants' copyrights nor did she sell their stuff.  *Albright v.*

513   *Oliver*, 510 US 266, *283 II (1994) ("The common law of torts long recognized that

514   a malicious prosecution ... can cause unjustified torment and anguish—both by tarnishing

515   one's name and by costing the accused money in legal fees and the like").  See also *Nodal v.*

516   *Infinity Auto Insurance Company*, No. 8:11-cv-1143-T-24MAP; 2011 WL 3297277 at *3

517   (M.D. Fla. Aug. 2, 2011) (citing *Ware v. U.S.*, 971 F. Supp. 1442, 1471 (M.D. Fla. 1997)

518   ("noting that injury to reputation, humiliation, and mental anguish resulting from a malicious

519   prosecution may be recoverable in a malicious prosecution action").

520   8.   As a direct and proximate result of Defendants' willful and wanton, actions,

521   for ten (10) months, Plaintiff was tormented with thoughts of incarceration and as a result

522   Plaintiff suffered mental anguish, emotional distress, experienced fear and anxiety and had

523   trouble sleeping. (*Barker v. Tomlinson*, No. 8:05-CV-1390-T-27EAJ, 2006 WL 1679645, at

524   *3 (M.D. Fla. Jun. 7, 2006) (awarding actual damages for emotional distress because Plaintiff

525   genuinely feared creditor's threat of arrest and other criminal punishment, anxiety for her

526   children's wellbeing). The fact that Defendant White stated that the fight had been fixed and

527   that she had never lost anything in her jurisdiction, increased the fear and anxiety.

528   9.   Plaintiff also lost the capacity for the daily pursuits and enjoyment of life.  For

529   ten (10) months, Plaintiff was forced to set aside her own work to spend countless hours

530   researching and studying in order to defend against Defendants' false claims, which resulted

531   in the loss of sleep.   On many occasions Plaintiff's research lasted all night and well into the

532   following day which resulted in mental confusion, bouts of short-term memory loss and

533   forgetfulness. See this Court (Doc. 131 pg, 11, fn 6) citing *S.H. Kress & Co. v. Powell*, 180

534   So. 757, 763 (1938) (discussing the availability of compensatory damages arising from

535   "actual and indirect pecuniary loss, mental suffering, value of time, actual expenses, and

536   bodily pain and suffering" in the context of an action for malicious prosecution and false

537   imprisonment).

538   **Plaintiff is Entitled to Recover Economic Compensatory Damages & Costs**

539           10.     Johnson also suffered out-of-pocket damages in defending against

540   Defendants' false copyright infringement claims which Defendants' have stipulated to, and in

541   prosecuting this present malicious prosecution case.   Therefore Plaintiff is entitled to recover

542   the same.    "Reasonable out-of-pocket expenses are one type of compensatory damages

543   available to a malicious prosecution plaintiff." *Ware v. United States*, 971 F. Supp. 1442,

544   *1471 (M.D. Fla. Jul. 21,1997) (quoting Miami National Bank v. Nunez, 541 So.2d 1259

545   (Fla. 3d DCA), rev. denied, 553 So.2d 1165 (Fla.1989).   See also this Court citing *Ware*

546   (Doc. 131 p. 11 fn 6); *Memphis Community School Dist. v. Stachura*, 477 US 299, *307

547   (1986) stating:

548           [C]compensatory damages may include not only out-of-pocket loss and
549           other monetary harms, but also such injuries as "impairment of
550           reputation  .  .  ,  personal humiliation,  and  mental anguish and
551           suffering." *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 350 (1974). See
552           also Carey v. Piphus, supra, at 264 (mental and emotional distress
553           constitute compensable injury in § 1983 cases).
554

555    See this Court (Doc. 131, p.11 fn 6) citing *S.H. Kress & Co. v. Powell*, 180 So. 757, 763

556    (1938) (discussing the availability of compensatory damages arising from "actual and

557    indirect pecuniary loss, mental suffering, value of time, actual expenses, and bodily pain and

558    suffering" in the context of an action for malicious prosecution and false imprisonment.

559    **Paula White is Jointly and Severally Liable as President, President of the board, and a**
560    **Director of NDCC; Incorporator and  a Director of PMMI**
561

562        11.    As President/director of NDCC and a director of PMMI, Paula Michelle

563    White maliciously caused the false copyright infringement complaint to be filed on behalf of

564    PMMI and NDCC which irreparably injured Johnson; therefore White must be held jointly

565    and severally liable with Corporate Defendants PMMI and NDCC. See *Morgan Intern.*

566    *Realty, Inc. v. Dade Underwriters Ins. Agency, Inc.*, 617 So. 2d 455, *459 (Fla. 3d DCA

567    1993) (holding the president of a corporation personally liable, finding that "by virtue of her

568    position as corporate president... of [corporation], the acts of [the president] are

569    indistinguishable from the acts of the corporation itself...").  See also  *Quartet Music v.*

570    *Kissimmee Broadcasting, Inc.*  795 F. Supp. 1100, *1103 (M.D. Fla., May 19, 1992)

571    ("...[A]n individual who is the dominant influence in a corporation, and through his position

572    can control the acts of that corporation, may be held jointly and severally liable with the

573    corporate entity...").

574        12.    As a Director of both NDCC and PMMI, two not-for-profit corporations,

575    White is also liable pursuant to Fla. Stat. §617.0834(1)(b)3.(2)(a)(1)-(2.) [2016]; See

576    *Housing Opps. Project v. Key Colony No. 4 Condo.*, 510 F. Supp. 2d 1003, *1013, *1014

577    (S.D. Fla. 2007).    See also *Sabal Palm Condominiums of Pine Island Ridge Association,*

578    *Inc. v. Fischer*, No. 12-60691-Civ.; 2014 WL 988767 at *4 (S.D. Fla. Mar. 13, 2014).

579   13. Paula White has publicly stated to the congregants of NDCC, and online

580 viewers: "I am the president of New Destiny Christian Center ... there are bylaws that

581 basically say that I'm in charge of everything. I can hire, I can fire... so when something

582 comes down the pike ... guess who's responsible [Ms. White raises her hand]. If a lawsuit

583 comes down, who's getting sued?  [Ms. White raises her hand].  Why?  'Cause I'm the

584 president."   "Legally I'm in charge of New Destiny Christian Center. ... Bylaws put me in

585 charge ... Legally I have all power to make decisions with New Destiny Christian Center...

586 So if anything happens under this jurisdiction, who's accountable? ... who gets sued? ... I

587 do."   White as acknowledged that she is jointly and severally liable to Johnson for damages

588 sustained.

589 **Paula White is Personally Liable for Damages in Her Individual Capacity Even if**
590 **Plaintiff Settles the Claims Against the Corporation**
591
592   14. Paula White caused, participated in and was the moving, conscious force

593 behind the corporations and the malicious prosecution of the underlying copyright

594 infringement complaint. On February 7, 2016, April 28, 2016 and May 1, 2016, respectively,

595 Defendant White admitted that *she* made a decision to take legal action against Plaintiff

596 because she felt that *she* was being talked about and persecuted.  White made no mention of

597 copyright infringement or Paula White Ministries.

598   Defendant White has publicly stated that as president, the bylaws give her complete

599 control over NDCC – the bylaws confirm Defendant White's statements.  As a corporate

600 officer, Defendant White still will be held liable personally and individually for damages

601 even if Johnson does settle her claim with NDCC and PMMI. See *Special Purpose Accounts*

602 *Receivable Co-op Corp v. Prime One Capital Company, L.L.C* 125 F. Supp. 2d 1093, *1105

603    (S.D. Fla. Dec. 19, 2000) (citing *Scutieri v. Miller*, 605 So. 2d 972, 973 (Fla. 3d DCA 1992)

604    (holding that corporate officers could be liable for defamation even though claim against

605    corporation had been settled).

606         15.    "Florida courts uniformly hold that if an officer, director, or agent commits or

607    participates in a tort, whether or not his actions are by authority of the corporation or in

608    furtherance of the corporate business, that individual will be liable to third persons injured by

609    his actions, **regardless of whether liability attaches to the corporation for the tort.**" [bold

610    added]. *Special Purp. Accts. Receivable Cooperative Corp. v. Prime One Cap. Co.*, 125 F.

611    Supp. 2d 1093, *1104 IV, *1105 (S.D. Fla., Dec. 19, 2000) (citing *First Fin. USA, Inc. v.

612    Steinger*, 760 So. 2d 996, 997-98 (Fla. 4th DCA 2000) (holding that president of corporation

613    was not shielded from liability for fraudulent conduct).   See also *Adams v. Brickell

614    Townhouse, Inc.*, 388 So. 2d 1279, *1280 (Fla. 3rd DCA 1980) (citing *Dade Roofing and

615    Insulation Corp. v. Torres*, 369 So.2d 98 (Fla. 3d DCA 1979) ("Where a tort has been

616    committed, individual officers and agents of a corporation are personally liable to any third

617    person even if such acts are performed within the scope of their employment or as corporate

618    officers or agents…" and "officers of a corporation are no less personally responsible for

619    their tortious acts by virtue of those acts having been performed in the corporate name").

620    [underline added].    See also *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F. 2d

621    1472, *1478 [12] (11th Circuit 1991) ("[Defendant] is liable to the Plaintiff … if [she]

622    actively caused the [malicious prosecution] as a moving conscious force…"); *Bentley Motors

623    Ltd. Corp. v. McEntegart*, 976 F. Supp. 2d 1297, *1315  (M.D. Fla., Sep. 30, 2013)

624    ("Because of its very nature a corporation can act only through individuals. 'Obviously[,] if

625   there was [a malicious prosecution] by the corporation, this [malicious prosecution] was

626   caused by some one or more persons either officers or employees of the corporation who

627   caused the acts to be done'. Mead Johnson, 402 at 23. If an individual actively and

628   knowingly caused the [malicious prosecution], he is personally liable. [citation]").

629   **Plaintiff Is Entitled To Recover Punitive Damages From All Defendants**

630   16.    Since liability for malicious prosecution has been established, Plaintiff is

631   entitled to punitive damages even if no compensatory damages are awarded. See *Engle v.*

632   *Liggett Group, Inc.*, 945, So. 2d 1246, *1262 (Fla. 2006) ("A majority of the Court (Anstead,

633   Pariente, Lewis, and Quince) concludes that an award of compensatory damages is not a

634   prerequisite to a finding of entitlement to punitive damages. Compensatory and punitive

635   damages serve distinct purposes. As the United States Supreme Court has explained:   The

636   former are intended to redress the concrete loss that the plaintiff has suffered by reason of the

637   defendant's wrongful conduct. The latter, which have been described as 'quasi-criminal,'

638   operate as 'private fines' intended to punish the defendant and to deter future wrongdoing").

639   17.    PMMI, NDCC and White initiated and continued the SLAPP Copyright

640   Infringement Action with malice and with the improper, ulterior motive of using (or

641   misusing) the Judicial System to intimidate, punish, shame, harass and attempt to extort

642   millions of dollars from Johnson, because White was angry because she had been exposed by

643   Johnson's videos.   The Copyright Lawsuit also was filed as a personal vendetta of Paula

644   White – and not for a corporate matter of copyright infringement. *Rushing v. Bosse*, 652 So.

645   2d 869, *874 [10] [11] (Fla. 4th DCA 1995) (citing *S.H. Kress & Co. v. Powell*, 132 Fla. 471,

646   <u>180 So. 757 (Fla. 1938))</u>. "The essence of the tort of malicious prosecution is the misuse of

647   legal machinery for an improper purpose."

648        18.   Defendants' "hired gun" attorney simply downloaded a copyright

649   infringement complaint – Case No. 6:14-cv-00337-GAP-KRS – from the Middle District of

650   Florida Court, and then duplicated every allegation against Plaintiff from that Complaint –

651   verbatim. Five (5) times in their Copyright Infringement Complaint Defendants falsely

652   claimed that they had **substantial** loss, because Plaintiff profited from the sale of their

653   videos. Defendants also stated a prayer for $150,000 per [108] infringement – totaling over

654   $16, million, even though in their Mandatory Initial Disclosures Defendants claimed no

655   damages at all.  Defendants have since admitted under oath that they never saw their videos

656   or other merchandise offered for sale on Plaintiff's website or You Tube channel, nor did

657   they see paid advertisements or technology for forwarding their videos to Facebook, Twitter,

658   or Instagram.  Defendants admitted under oath that they read a draft of the copyright

659   infringement complaint before it was filed (fully knowing that the allegations were false), yet

660   they still authorized their attorney to file the bogus copyright infringement complaint.

661   Defendants (and their copyright attorney) deserve to be punished to the fullest extent of the

662   law for their outrageous, despicable actions.

663        19.   Punitive damages are warranted against Corporate Defendants PMMI, NDCC

664   and White in accordance with Fla. Stat. §768.73(1)(c) [2016], and §768.72(2) & (3)(a)(b) as

665   Defendants maliciously leveled serious false criminal copyright infringement charges against

666   Plaintiff with the specific intent to harm, and did harm Plaintiff.  See *Flying Fish Bikes, Inc.*

667   *v. Giant Bicycle, Inc.*, 181 F. Supp. 3d 957, *974 (M.D. Fla., Feb. 22, 2016) ("Section

668   768.73(1)(c), which removes the limit on punitive damages, applies '[w]here the fact finder

669   determines that at the time of injury the defendant had a specific intent to harm the

670   claimant.'"). The Eleventh Circuit stated that:

671       (a) "Intentional misconduct" means that the defendant had actual
672       knowledge of the wrongfulness of the conduct and the high probability
673       that injury or damage to the claimant would result and, despite that
674       knowledge, intentionally pursued that course of conduct, resulting in
675       injury or damage.
676

677   20.   Defendants' misconduct was malicious, willful, intentional and premeditated.

678   White refers to Johnson as "the media witch" and prays to have Johnson's head chopped off.

679   On October 13, 2013, White publicly stated her evil intent to inflict damage and to "be a

680   menace" to the enemy [Johnson]; five (5) months later on March 27, 2014, PMMI and

681   NDCC – under the authorization of Paula white – filed the SLAPP copyright infringement

682   lawsuit using the fictitious name 'Paula White Ministries'.

683   21.   The Supreme Court of Florida has determined that, "The incentive to bring

684   actions for punitive damages is favored because it has been determined to be the most

685   satisfactory way to correct evil-doing in areas not covered by the criminal law." *Campbell v.*

686   *Gov't Employees Ins, Co.*, 306 So. 2d 525, *531 [3] (Fla. 1974).  See also *Johns-Manville*

687   *Sales Corp. v. Janssens*, 463 So. 2d 242, *247 [1][2] (Fla. 1ˢᵗ DCA 1984) *(quoting Campbell*

688   *v. Gov't Employees Ins., Co.)*.

689   22.   "Under Florida law, the purpose of punitive damages is not to further

690   compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter

691   similar misconduct by it and other actors in the future." *Myers v. Central Florida*

692   *Investments, Inc.*, 592 F. 3d 1201, *1219 (11th Cir. 2010) (quoting Owens-CorningFiberglass

693   Corp v. Ballard, 749 So. 2d 483, 486 (Fla. 1999).   The wealth of the Defendants is a factor

694   in determining the amount of punitive damages to be awarded. See *Myers v. Central Florida*

695   above at *1216.

696        "Punishment and deterrence are the policies underlying punitive damages." *W.R.*

697   *Grace & Co.-Conn v. Waters*, 638 So. 2d 502, *503 [1], *504 (Fla. 1994) (citing *White*

698   *Constr. Co. v. Dupont*, 455 So. 2d 1026, 1028-29 (Fla. 1084) and *St. Regis Paper Co. v.*

699   *Watson*, 428 So. 2d 243 (Fla. 1983)); *Winn & Lovett Grocery Co. v. Archer*, 126 Fla. 308,

700   *327; 171 So. 214, 221 (Fla. 1936).

701        23.   The majority of Florida Courts agree that, "It is axiomatic 'that a corporation

702   can only act through its officers and agents...' *Browning v. State*, 101 Fla. 1051, 133 So. 847,

703   848 (Fla. 1931)'. Thus, by virtue of [her] position as corporate president ... the acts of

704   [White] are indistinguishable from the acts of the corporation[s] [themselves]. Under these

705   circumstances, the corporation[s] [are] liable for the punitive damages." *Kent Ins. Co. v.*

706   *Schroeder*, 469 So. 2d 209, *210 [1] (Fla. 5th DCA, 1985) (citing *Bankers Multiple Line*

707   *Insurance. Company v. Farish*, 464 So. 2d 530 (Fla. 1985).

708        24.   "[Corporations] do not pray, worship, observe sacraments or take other

709   religiously-motivated actions separate and apart from the intention and direction of their

710   individual actors." *Beckwith Elec. Co. Inc. v. Sebelius*, 960 F. Supp. 2d 1328, *1341 (M.D.

711   Fla. Jun. 25, 2013) (quoting *Hobby Lobby*, 870 F. Supp. 2d at 1291).

712        Therefore, the malice of their President, Paula White, is also indistinguishable from

713   the malice of the corporations, NDCC and PMMI. The Florida Supreme Court in *Winn &*

714   *Lovett Grocery Co. v. Archer*, 126 Fla. 308, *324 (Fla. 1936), stated that, [a]ll attempts,

715   therefore, to distinguish between the guilt of the servant and the guilt of the corporation; or

716   the malice of the servant and the malice of the corporation; or the punishment of the servant

717   and the punishment of the corporation, is sheer nonsense. See also *City of Salt Lake City v.*

718   *Hollister,* 118 US 256, *262 (1886) (quoting *Philadelphia, Wilmington and Baltimore*

719   *Railroad Co. v. Quigley,* 21 How. 202) (citing *Reed v. Home Savings Bank,* 130 Mass. 443,

720   445 and *Copley v. Grover and Baker Sewing Machine Co.,* 2 Woods, 494).

721       25.    "Punitive damages should bear a reasonable relationship to the harm *that is*

722   *likely to occur from the defendant's conduct* as well as to the harm that actually has

723   occurred.' (citation). ...It is appropriate to consider the magnitude of the *potential harm* that

724   the defendant's conduct would have caused to its intended victim if the wrongful plan had

725   succeeded, as well as the possible harm to other victims that might have resulted if similar

726   future behavior were not deterred.") [underline added].   See *TXO Production Corp. v.*

727   *Alliance Resources Corp.,* 509 US 443, *460 (1993). See also *Clemons v. State Risk*

728   *Management Trust Fund,* 870 So. 2d 881, *883 (Fla. 1st DCA 2004) (quoting *Johns-*

729   *Manville Sales Corp., v. Janssens,* 463 So. 2d 242, 247 (Fla 1st DCA 1984).

730       26.    Had White's wicked scheme succeeded, in addition to the damage actually

731   suffered, Plaintiff would have potentially suffered millions of dollars in damages and faced

732   five (5) or more years in prison with her life in jeopardy. (Doc. 76 ¶¶ 80, 82, 84, 86, 88-89);

733   17 U.S.C. § 506(a) and 18 U.S.C. § 2319. See *U.S. v. LaMacchia,* 871 F. Supp. 535,*539

734   (D. Mass. 1994) stating that, "...The 1897 Act defined the *mens rea* of criminal copyright

735   infringement as conduct that is "willful" and undertaken "for profit..." [underline added].

736   See also, See *Cohen v. U.S.,* 151 F. 3d 1338, *1339 (11th Cir.1998) (While in a minimum

737   security prison for copyright infringement, defendant was beaten over the head with a metal

738   chair, underwent neurological surgery, was hospitalized for three weeks and is left unable to

739   walk normally, has severe headaches, has permanent short-term memory problems and has

740   lost his sense of taste and smell).

741          27.    White has a pattern of going from one attorney to another filing SLAPP

742   lawsuits.   Several times White has filed or threatened to file bogus lawsuits against innocent

743   persons causing financial harm, and harm to their reputations.   In 2011 and 2014,

744   respectively, White sued, falsely claiming defamation, theft and copyright infringement. In

745   2012, White threatened to sue another innocent person, falsely claiming defamation.   Each

746   time White dismissed the Complaint or the issue, leaving the innocent victims with financial

747   debt and tarnished reputations.   Yet again, in 2017/2018, White is threatening to sue two

748   entities and an individual, falsely claiming defamation.   White can be clearly seen and heard

749   on video making the very statement that she has denied making, and is threatening to sue

750   over.   This type of behavior needs to stop.

751          28.    This evidence of prior lawsuits, and newspaper articles is admissible to show

752   White's motive and intent to stop people from legally sharing information that exposes her;

753   and it shows that White has a pattern of wrongful acts. *United States v. Siegel* 536 F.3d 306,

754   317(B), 318 (4th Cir. 2008) Cert denied., 555 U.S. 1087, 129 S.Ct. 770 (2008) (similarly

755   shows motive to prevent the sharing of information and a pattern or history of wrongful acts).

756   [underline added].   See also Federal Rule of Evidence 404(b)(2) states in pertinent part

757   (emphasis added):

758                This evidence may be admissible for another purpose, such as proving
759                motive, opportunity, intent, preparation, plan, knowledge, identity,
760                absence of mistake, or lack of accident.
761                Federal Practice and Procedure - Evidence Rules p 63 (2013).

762

763    White will continue her outrageous, despicable, illegal, immoral, and ungodly behavior

764    without liability or accountability, if the Court does not pass judgment and put an end to it –

765    or at least deter her.

766    **Evidence of Defendants Net Worth / Financial Condition**

767          29.      Because Defendants have refused to fully participate in the discovery process,

768    and have not produced the requested documents that would more accurately determine the

769    Defendants' true financial condition/net worth, and/or the ability to pay a punitive damages

770    award, Plaintiff will present videos of Paula White, her son Bradley Knight and others

771    attesting to White's wealth.  Plaintiff will also present photos which are reflective of Whites'

772    upscale lifestyle. White frequently travels nationally and internationally, often times by

773    private jet, and also pays for guest speakers to be flown by private jet from within the U.S.

774    and from Africa. Defendants are part owner of a T.V. network and solicit donations

775    worldwide via their T.V. program 'Paula Today", and via Facebook, Twitter and other

776    avenues.   White is a public speaker, author, and pastor of a Mega-church, NDCC.

777          Plaintiff will also present Defendants' answers to interrogatories and admissions,

778    along with financial documents that they produced, that may be somewhat helpful as a

779    starting point.

780    **V.**     **CONCLUSION**

781          WHEREFORE, for all the above reasons stated herein, at the close of Plaintiff's case,

782    Plaintiff requests that a Final Judgment be entered against New Destiny Christian Center

783     Church, Inc. a/k/a Paula White Ministries (PWM); Paula Michelle Ministries, Inc. a/k/a Paula

784     White Ministries; and Paula Michelle White a/k/a Paula Michelle Cain for malicious

785     prosecution of the underlying copyright infringement lawsuit, entitling Plaintiff to nominal,

786     economic, non-economic compensatory, and punitive damages, and costs in defending

787     against the Copyright Infringement Lawsuit, and the costs of prosecuting this present

788     Malicious Prosecution Lawsuit.

789     Dated: April 11, 2018                    Respectfully submitted:
790
791
792                                             Shirley Jn Johnson
793                                             PRO SE LITIGANT
794                                             theremnantsjnj@yahoo.com
795                                             P.O. Box 58818
796                                             Seattle, WA 98138
797                                             Telephone: 253-846-6805
798
799
800                              VERIFICATION
801
802         Under penalty of perjury, I declare that I have read the foregoing Plaintiff's Verified

803     Trial Brief and the facts alleged therein are true and correct to the best of my knowledge and

804     belief, except as to matters alleged on information and belief, and, as to those, I believe them

805     to be true.

806                                             By:
807                                             Shirley Jn Johnson
808
809
810         On this _____11_____ day of ____April____ 2018, before me personally

811     appeared SHIRLEY JN JOHNSON who ____is personally known to me or __X__ who

812     produced a WASHINGTON driver's license bearing her name and photograph as

813     identification, and who executed this document.

814     _____ Commission Expires: _05/30/2020_
815     Notary Public

> Notary Public
> State of Washington
> HENRIETTA B RHODES
> My Appointment Expires May 30, 2020

816                          CERTIFICATE OF SERVICE
817
818          I HEREBY CERTIFY that on, April 11, 2018, this Plaintiff's Verified Trial was sent
819     via Express U.S. Mail to be filed with the Clerk of the Court and a true and correct copy was
820     sent via Certified U.S. Mail to Krista Cammack and Clay H. Coward, Wicker, Smith,
821     O'Hara, McCoy & Ford, PA – P. O. Box 2753, Orlando, FL 32802-2753; Christian W.
822     Waugh – Waugh Law, PA , 13940 U.S. Hwy 441 – Ste 906, The Villages, FL 32159, and
823     Eric V. Hires, The Law Office of Eric V. Hires, LLC. –  P.O. Box 568943, Orlando, FL
824     32856-8943.
825
826     A copy will be E- mailed to Judge Dalton at chambers_flmd_Dalton@flmd.uscourts.gov
827
828
829
830                                             By:
831                                                  Shirley Jn Johnson